*In re* ESTATE OF MARY YOUNGQUIST, a Disabled Person (Elmhurst Extended Care, Inc., Petitioner-Appellee, v. Joseph Falzone, Guardian of the Estate of Mary Youngquist, a Disabled Person, Respondent-Appellant).

First District (1st Division) No. 1—91—1514

Opinion filed September 8, 1992.—Rehearing denied February 5, 1993.

Corcoran & Corcoran, P.C., of Chicago (James M. Corcoran, Jr., of counsel), for appellant.

Sigel, Albin, Landau & Rubin, of Chicago (Maurice Albin, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Respondent, Joseph Falzone, the guardian of the estate of Mary Youngquist, a disabled adult, appeals from an order of the circuit court which allowed petitioner Elmhurst Extended Care Center, Inc.'s claim against the estate.

We hold that the issue is moot and, as a result, dismiss the appeal.

On December 8, 1988, the circuit court appointed Joseph J. Orlando as the guardian of Youngquist, his sister. Youngquist, at that time, was a resident in petitioner's nursing home. Orlando died on June 15, 1990.

Following Orlando's death, Youngquist remained in petitioner's facility. Prior to September 17, 1990, petitioner apparently telephoned Corcoran and Corcoran, one of the guardian's law firms, and informed the attorneys that Youngquist was subject to involuntary removal due to outstanding bills. On September 17, 1990, attorney James M. Corcoran responded, by letter, to the call and explained that no extension of a care contract could be entered into without the approval of the circuit court and that a successor guardian had to be appointed. Corcoran asked for "patience until we have someone who can sign checks, as well as the contract." Petitioner responded by letter dated September 20, 1990, saying that "[the] explanation of the situation [was] completely understandable" and that the request for "patience" could be "honor[ed]." Petitioner advised Corcoran that it would "continue to care for [Youngquist] *** without threat of involuntary discharge." Apparently no further action was taken on the account because, on January 31, 1991, petitioner again wrote to Corcoran, this time giving him 21 days to make other arrangements for Youngquist's care since her bill, now with a balance of $21,437.65, remained unpaid.

On February 20, 1991, petitioner sent a notice of motion and petition for the appointment of a guardian *ad litem* for Youngquist so that her bill could be paid and involuntary discharge proceedings could be avoided. Corcoran then filed a suggestion of death with the court with respect to Orlando. At the same time, respondent, a step-grandson of Orlando, petitioned the court for appointment as Youngquist's successor guardian. In his petition, respondent stated that Youngquist resided at petitioner's facility, that the current value of the estate was $21,701.35,

and that the anticipated gross annual income was $10,215.30. Respondent also stated that upon appointment, he would "need to petition this court as to payment of expenses, including *** the nursing home expenses where Mrs. Youngquist resides [which] ha[d] not been paid since May 30, 1990." The circuit court subsequently appointed respondent as Youngquist's successor guardian on February 28, 1991.

At the hearing before the court on the various other motions pending, petitioner requested that a substantial payment be made on Youngquist's account so that all action regarding involuntary removal could be suspended. Respondent argued that, since no inventory had been taken on the estate and no final account of the original guardian had ever been filed, additional time was needed so that those procedures could be undertaken and that the proper documents could be filed with the court. Respondent admitted that, at the time of the hearing, Youngquist was receiving social security payments of $715 per month, which were deposited into the estate bank account. The court then ordered respondent to pay petitioner $10,000 "forthwith as a payment on account for past services rendered to the ward." The court further ordered that respondent "pay all social security payments payable to the ward to Elmhurst Extended Care Center each month while she is a resident" at the facility. Respondent's motion for reconsideration of the order was denied, and this appeal followed.

Respondent argues that the circuit court failed to follow the provisions of the Illinois Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110½, par. 1—1 *et seq.*) in allowing petitioner's claim against the estate.[1]

We, however, initially must address several developments, occurring after this appeal was filed, which, in our opinion, render the issue moot. Youngquist continued to reside at petitioner's facility until a few days before her death in May 1991. On April 23, 1991, petitioner filed a claim in the circuit court for "nursing home services rendered from June 1, 1990 to April 22, 1991." On May 8, 1991, petitioner filed a petition, seeking a finding, judgment and order as to the payment of Youngquist's bill. The petition sought in

---

[1]Subsequent to the filing of the briefing materials in this case, respondent filed a motion in this court seeking to strike matters in petitioner's brief which are "improper, misleading and outside the record," arguing that petitioner's brief violates Supreme Court Rule 341(f). (134 Ill. 2d R. 341(f).) We find respondent's motion to be specious because petitioner's brief in no way violates Rule 341(f). (134 Ill. 2d R. 341(f).) Moreover, after reviewing the record, we are satisfied that petitioner did not, in any way, mislead this court or misrepresent the proceedings which occurred before the circuit court.

excess of $27,762.57 for services rendered to Youngquist until April 22, 1991. Accordingly, this new claim and petition seeks a total payment on the account and subsumes the action now under appeal, as the record reveals that petitioner currently is seeking redress by utilizing the provisions of the Probate Act which deal expressly with claims against a decedent's estate. See Ill. Rev. Stat. 1989, ch. 110½, pars. 18—1, 18—2.[2]

 █ An issue is moot when no actual rights or interests of the parties remain or where events occur which render it impossible for the reviewing court to grant effectual relief to either party. (*Hightower v. Duffy* (1989), 192 Ill. App. 3d 65, 548 N.E.2d 495, *appeal denied* (1990), 131 Ill. 2d 559, 553 N.E.2d 396.) Here, the order of the circuit court appealed from provided that respondent pay $10,000 to petitioner for past services rendered and that respondent turn over Youngquist's monthly social security payments to petitioner for Youngquist's subsequent care. If this court were to affirm the order, respondent, in effect, now would be required to make payments for future care which can no longer be received because Youngquist has died. Although an argument could be made that the payment of $10,000, ordered by the circuit court, could be used to repay petitioner for services rendered, new proceedings should be undertaken to pursue those monies as Youngquist's death significantly has changed the nature of both the estate and the·controversy.

██ Petitioner also seeks attorney fees for defending the "frivolous" appeal taken by respondent. We do not find the appeal frivolous as respondent was seeking review of an order which granted a claim against an estate of a ward without a claim ever having been filed. In view of that fact, each party should be responsible for its own attorney fees incurred during the pendency of this appeal.

Based on the foregoing, the appeal is dismissed as moot.

Appeal dismissed.

BUCKLEY, P.J., and MANNING, J., concur.

---

[2]Indeed, petitioner's counsel, during oral arguments before this court, conceded that the prior action had, in effect, been subsumed by the current claim now in the circuit court.