**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 17 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY J. O'CONNOR**
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DAVID C. WILSON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A04-1110-CR-516 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patricia J. Gifford, Judge
Cause No. 49G05-0912-FA-100865

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant David Wilson appeals the forty-year sentence imposed following his convictions for Class A felony Burglary,[1] Class B felony Possession of a Firearm by a Serious Violent Felon,[2] and Class B felony Conspiracy to Commit Burglary.[3] Specifically, Wilson contends that the trial court abused its discretion in failing to consider his young age as a mitigating factor. We affirm.

## FACTS AND PROCEDURAL HISTORY

A few days prior to March 16, 2009, James Warfield's apartment was burglarized. The thieves took approximately ten pounds of marijuana. Warfield suspected that David and Jason Killinger were behind the burglary. Angry that his apartment had been burglarized, Warfield formulated a plan to "take his stuff back." Tr. p. 118.

On March 16, 2009, Warfield, Kyle Hittle, Brian Bronough, and Wilson, who was nineteen years old at the time, met at a house on Post Road in Indianapolis where they discussed Warfield's plan. Hittle, Bronough, and Wilson agreed to participate in Warfield's plan. In preparation for the burglary, the men drove to a Wal-Mart to purchase duct tape and gloves. They then drove to the Killingers' home.

Upon arriving at the home, Wilson, armed with an AK-47, kicked the door in and Warfield, Bronough, and Wilson entered the home. After hearing the door being kicked in,

---

[1] Ind. Code § 35-43-2-1 (2008).

[2] Ind. Code § 35-47-4-5 (2008).

[3] Ind. Code §§ 35-43-2-1 and 35-74-4-5 (2008).

Jason and his brother Brian Killinger hid in a bathroom and David hid in a bedroom.[4] David called and reported the break-in to the police.

At some point, Brian opened the bathroom door to see what was happening in the interior of the house. Brian found that Bronough was standing outside the bathroom pointing a gun at Brian and Jason. Bronough forced his way into the bathroom, began wrestling with Jason, and demanded money. During the struggle, Bronough's gun discharged, but no one was hit.

As Bronough entered the bathroom, Wilson went back to the living room and exchanged the AK-47 for the 9mm handgun that Warfield was carrying. Wilson returned to the bathroom and shot Brian, who was unarmed and sitting on the bathroom floor, in the stomach. Brian shut the bathroom door. Wilson fired again. The bullet traveled through the bathroom door and struck Brian in the arm. After Brian was shot, Jason agreed to give the intruders money. Bronough marched Jason into the living room while holding a gun to his head.

At that moment, the police entered the residence shouting, "[G]et down, get down." Tr. p. 133. Wilson and Warfield forced open the back door and fled from the home. Warfield was soon taken into custody by the police. Warfield later identified Wilson from a photo lineup, leading to Wilson's arrest.

On December 16, 2009, the State charged Wilson with Class A felony burglary, Class

---

[4] A fourth man, who is described as a friend of David Killinger, was also inside the home at the time of the burglary.

3

A felony attempted robbery, Class C felony battery, Class B felony possession of a firearm by a serious violent felon, Class B felony conspiracy to commit burglary, Class C felony assisting a criminal, and Class A misdemeanor carrying a handgun without a license.[5] Wilson waived his right to trial by a jury. The trial court conducted a bench trial on August 1 and August 24, 2011, at the conclusion of which it found Wilson guilty as charged. On September 13, 2011, the trial court sentenced Wilson to forty years for the burglary, fifteen years for the possession of a firearm by a serious violent felon, and fifteen years for the conspiracy to commit burglary. The remaining counts were merged out of double jeopardy concerns. The trial court ordered that the sentences run concurrently to one another but consecutively to Wilson's sentence in cause number 49G22-0607-FB-130165. This appeal follows.

## DISCUSSION AND DECISION

Wilson contends that the trial court abused its discretion in sentencing him by failing to consider his youth as a mitigating factor at sentencing. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

---

[5] The State subsequently filed an additional charging information alleging that the carrying a handgun without a license charge should rise to the level of a Class C felony because Wilson had previously been convicted of a felony within the preceding fifteen years.

When imposing a sentence in a felony case, the trial court must provide a reasonably detailed sentencing statement explaining its reason for imposing the sentence. *Id*.

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id*. at 490-91.

In sentencing Wilson, the trial court found Wilson's criminal history to be an aggravating factor and his mental disability to be a mitigating factor. After considering each of these factors, the trial court imposed an enhanced, aggregate forty-year term.[6] Again, in challenging his sentence, Wilson claims that the trial court abused its discretion by failing to find his youth to be a mitigating factor.

The allegation that the trial court failed to find a mitigating factor requires Wilson to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. "However, '[i]f the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist.'" *Id*. (quoting *Fugate v. State*, 608 N.E.2d

---

[6] Indiana Code section 35-50-2-4 (2008) provides that a person who commits a Class A felony shall be imprisoned for a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. Indiana Code section 35-50-2-5 (2008) provides that a person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years, with the advisory sentence being ten years.

5

1370, 1374 (Ind. 1993)). Likewise, the trial court is not "obligated to weigh or credit the mitigating factors the way a defendant suggests they should be weighed or credited." *Abel v. State*, 773 N.E.2d 276, 280 (Ind. 2002). "'[I]f the defendant fails to advance a mitigating circumstance at sentencing, this court will presume that the factor is not significant, and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal.'" *Creekmore v. State*, 853 N.E.2d 523, 530 (Ind. Ct. App. 2006), *clarified on denial of reh'g* (quoting *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct. App. 2005)).

Wilson concedes that his trial counsel did not argue that his youth should be considered to be a mitigating factor at sentencing. Wilson, however, argues that the trial court abused its discretion by failing to consider his youth to be a mitigating factor because his age was correctly listed in the pre-sentence investigation report. In making his claim, Wilson acknowledges that a defendant's youth is not automatically a significant mitigating circumstance, but argues that, under the facts and circumstances presented here, it should have been considered mitigating. *See generally*, *Gross v. State*, 769 N.E.2d 1136, 1141 n.4 (Ind. 2002) (providing that while a defendant's youth may be a mitigating factor in some circumstances, age is not a per se mitigating factor). Wilson asserts that in light of his mental disabilities, which he acknowledges that the trial court found to be a mitigating factor, his youth should also have been considered a mitigating factor because, at the time he committed the instant crimes, he was more immature and less able to control his impulses than other nineteen-year-olds.

For its part, the State asserts that because Wilson failed to advance his youth as a

mitigating circumstance at sentencing, this court should presume that it is not significant and conclude that Wilson is precluded from advancing it as a mitigating circumstance for the first time on appeal. *See Creekmore*, 853 N.E.2d at 530. We agree. However, in light of our preference for deciding claims on their merits, we will nonetheless entertain Wilson's claim on appeal.

Again, a defendant's youth is not automatically a significant mitigating factor. *See Gross*, 769 N.E.2d at 1141 n.4. Upon review, we conclude that Wilson's youth does not warrant significant mitigating consideration as his actions are more akin to those of a hardened criminal than those of an immature nineteen-year-old. The record demonstrates that Wilson acted purposefully in carrying out his part of the conspiracy to break into the Killingers' home and rob them of certain items. Wilson went with Warfield, Bronough, and Hittle to a store to purchase certain materials which could be used in furtherance of their crimes, entered the Killingers' home carrying an AK-47, and upon entering the home, switched weapons with Warfield and shot an unarmed Brian Killinger in the stomach and in the arm. Moreover, Wilson's criminal history indicates that he had previously been involved in at least two burglaries as a juvenile and one as an adult. Thus, in light of Wilson's apparent predilection for committing burglaries, we can say with confidence that we believe that the trial court would have imposed the same sentence even if it had considered Wilson's age to be a mitigating factor. As such, we conclude that the trial court acted within its discretion in sentencing Wilson. *See Anglemyer*, 868 N.E.2d at 490-91.

The judgment of the trial court is affirmed.

7

VAIDIK, J, and CRONE, J., concur.