David **FURMAN**, Defendant-Appellant,

v.

**STATE** of Indiana, Plaintiff-Appellee.

No. 45A03–8602–CR–45.

Court of Appeals of Indiana,
Third District.

Aug. 28, 1986.

---

Donald P. Levinson, Steve Lustina, Merrillville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

In early 1984, the Gary police received a tip that persons living at a 4701 East Tenth Street were selling drugs. The police contacted a confidential informant who said that he knew the residents of the house in question and confirmed the earlier tip. Officer Mark Keller and the informant went to the house and bought drugs. The seller was identified as David Furman. Furman was, in due course, arrested.

After a jury trial, Furman was convicted of dealing in a schedule I narcotic drug, a Class B felony. From this verdict he appeals. He presents this court with five issues:

I.   Was the verdict supported by sufficient evidence?

II.  Did the trial court err in failing to order the pretrial disclosure of the confidential informant's name?

III. Did the trial court err in failing to dismiss charges against Furman after the state interjected the role of its confidential informant into evidence?

IV.  Did the trial court err in refusing to order an in camera examination of the confidential informant at the conclusion of the state's case?

V.   Was Furman denied a fair trial due to the combined effect of weak evidence, the failure of the trial court to order disclosure of the informant's name, and the court's failure to examine the informant?

We affirm.

## I.

Was the verdict supported by sufficient evidence?

At trial, Officer Keller testified that he was part of an investigation into cocaine and heroin dealing in a particular area of Gary, Indiana. During the investigation, the police received unspecified intelligence from a police hotline system, a confidential informant, and from narcotics dealers they worked with while undercover. Record at 229–32. Keller testified that informants are used to gather information and to make introductions. He also testified that informants' names are kept confidential for their safety.

Keller then went on to say that he and a confidential informant went to 4701 East Tenth Street and bought drugs from Furman. Furman concedes that this and other evidence at least facially supports all elements of the crime charged. He argues that the evidence is inherently improbable and thus is insufficient to support a verdict. *Thomas v. State* (1958), 238 Ind. 658, 154 N.E.2d 503. He presents a list of problems he perceives with Keller's testimony and its relation to other evidence presented. He concludes that Keller's testimony is so inherently improbable that a verdict cannot rest on it.

Keller testified that the person who sold him drugs was six feet tall, clean shaven, and had dark brown or red hair. He positively identified Furman as the person who sold him the drugs.

Other evidence presented at trial indicated that Furman was five feet, eight inches tall and had brown hair. Furman and his sister testified that he had had a mustache for several years.

Keller testified that he did not notice a dog when he bought the drugs. Furman testified that he owned a dog that always barked when people came to the house.

There were various discrepancies between Keller's description of the house and photographs of the house that were submitted.

At trial, Keller testified that when he made the buy, he saw a skinny girl whose description matched that of the girl Fur-

man was then dating and to whom Furman is now married. He also testified that the purchase was made at about 11:30 p.m.

In a deposition taken before trial, Keller did not mention the girl, and could not recall what time in the evening the purchase was made. Further, in an affidavit to support a request for a search warrant, Keller stated that the police left the station at 11:30 p.m. If so, the purchase would have been made at about 12:30 a.m. At trial, Keller testified that this was a mistake in dictation.

The property inventory sheet Keller prepared said that the drugs were purchased at Tenth and Clay. Furman lives at Tenth and Cass. Keller stated that he intentionally wrote the wrong address in order to protect the confidentiality of his investigation.

Furman also presented hand written time cards, prepared by the woman who is now his mother-in-law. According to the time cards, Furman was working for a catering service until 11:45 p.m. According to Furman, he was then called upon by his other employer, a funeral home, to pick up a body. A receipt for the body dated 12:30 a.m. was submitted. It contains what purports to be Furman's signature. Furman would have us conclude from the various discrepancies in Keller's testimony, and his own "uncontroverted"[1] alibi evidence, that Keller's identification is inherently unbelievable.

█ The discrepancies in the evidence merely impeached Keller's identification testimony and created issues for the jury to decide. It decided to believe Keller. The jury was free to believe or disbelieve Furman's alibi. It cannot be said that Keller's testimony runs so counter to human experience as to render it worthless. It was capable of sustaining the jury's verdict.

## II.

Did the trial court err in failing to order the pretrial disclosure of the confidential informant's name?

---

1. Keller's eyewitness testimony, of course, con-    tradicted Furman's alibi.

Indiana does not favor disclosing the identity of confidential informants. If an accused person desires disclosure, the burden is on him to prove by a preponderance of the evidence that his defense requires disclosure. *Rihl v. State* (1980), Ind.App., 413 N.E.2d 1046; *Jones v. State* (1983), 56 Md.App. 101, 466 A.2d 895. The state may produce evidence to show that disclosure is not necessary to the defendant's case.

The trial judge must then make his decision by balancing the public interest in encouraging a free flow of information to the authorities with the defendant's interest in obtaining disclosure to prepare his defense. The judge should consider the crime charged, the defenses, the possible significance of the informant's testimony, and other relevant factors. *Roviaro v. United States* (1957), 353 U.S. 53, at 62, 77 S.Ct. 623, at 628, 1 L.Ed.2d 639.

Furman's argument is that no probative evidence of a paramount interest in nondisclosure was presented. Thus, disclosure should have been ordered.

Furman's defense was alibi. Prior to trial, he petitioned the court for an order requiring the state to reveal the name of its confidential informant. On November 27, 1984 a hearing was held. The evidence produced indicated that Officer Keller and a confidential informant were the only witnesses to the alleged crime. The only question was whether the informant would corroborate Keller's identification. Hearsay evidence indicated that Furman had, in the past, threatened the use of deadly weapons. Other testimony tended to show that if the state were required to reveal informants' names, it would be more difficult to recruit them.

■ This was probative evidence that supported the court's decision to deny discovery. Furman has not shown that the decision was an abuse of discretion. *United States v. Brown* (9th Cir.1977), 562 F.2d 1144, 1148; *Wittington v. State* (1970), 8 Md.App. 676, 262 A.2d 75. No reversible error is shown in this regard.

## III.

Did the trial court err in failing to dismiss charges against Furman after the state interjected the role of its confidential informant into evidence?

During the state's case in chief, Officer Keller testified that the investigation began when information was received from a hotline tip, and a confidential informant. He testified that informants are used to make introductions to dealers, and are at some danger. He also testified that the informant was present during the purchase. Although the state had previously refused to reveal its informant's name, Furman did not object to, or move to strike the testimony. He did not ask the prosecution witness for the informant's name or in any manner attempt any cross examination concerning the informant. Instead, he waited until the end of the state's case and moved for dismissal. The trial court denied the motion. Based on *Glover v. State* (1969), 253 Ind. 121, 251 N.E.2d 814 Furman argues that the court erred.

In *Glover v. State* the prosecution recalled a police officer to the stand to testify to the role of a confidential informant in identifying Glover as the unknown person who fled from the police officer, thus putting forth the substance of the informant's[2] identification. He also testified that the informant was reliable. On cross examination, he refused to identify the informant and the trial court refused to order it. The Supreme Court reversed. It held that the accused was entitled to attack the credibility of the witnesses against him, which in essence the informant, through the officer's testimony, had become. It found that the state had opened the door to disclosure by playing up the informant's role, and that having done so, it could not refuse to identify the informant.

As already discussed, the state is generally privileged to refuse to identify its confidential informants. It may waive that privilege where it inquires at trial into the

2. It appears that there were actually two informants.

substance of the informant's information. *State v. McCoy* (1974), 10 Wash.App. 807, 521 P.2d 49.

Here unlike *Glover* the state did not attempt to elicit the substance of the informant's information. Moreover, unlike the situation in *Glover,* Furman was not rebuffed in an attempt to cross examine the officer. Indeed he propounded no questions concerning the informant or his activities. (Nor did he attempt to secure such information from the other witness called by the state.)

◼ Since the state did not inquire into the substance of the informant's activities, statements and information, there was no waiver. Since Furman attempted no examination on the subject we are unwilling to say his rights to confront his accusers or to cross examine the witnesses against him were impinged. We believe *Glover* should be distinguished. It requires more than the mere mention that an informant was involved to invoke the remedy there found necessary. The court did not err in denying the motion for dismissal or directed verdict.

### IV.

Did the trial court err in refusing to order an in camera examination of the confidential informant at the conclusion of the state's case?

At the close of the state's case, Furman asked the trial court to conduct an in camera examination of the informant. The court refused to do so.

On appeal, Furman argues that the trial court should have granted the motion since this would have nicely balanced the prosecution's interest in nondisclosure with his interest in learning what the informant knew. While in situations like this private examination of the informant is to be encouraged, since it can provide a useful way to fully balance the interests involved, we cannot say that the trial court erred.

A court has a great deal of discretion in ordering and scheduling proceedings before it. *Hyatte v. Lopez* (1977), 174 Ind. App. 149, 366 N.E.2d 676; *City of Bloomington v. Holt* (1977), 172 Ind.App. 650, 361 N.E.2d 1211.

◼ Here, Furman did not move for an in camera examination until after the state had rested. He has shown no reason that he could not have made the motion some time between his arrest on June 6, 1984 (or for that matter, upon the denial of his motion for disclosure of the informant's name on December 4, 1984) and the start of the state's case on October 10, 1985. We find no abuse of discretion in the trial court's refusal to stop the proceedings so the informant could be located and examined.

### V.

Was Furman denied a fair trial due to the combined effect of weak evidence, the failure of the trial court to order disclosure of the informant's name, and the court's failure to examine the informant?

◼ In his final argument, Furman summarizes his previous arguments and concludes that the totality of the circumstances present in the case combined to deny him a fair trial. After an examination of the case, it does not appear that he was denied a fair trial.

For the reasons discussed, the judgment is affirmed.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.