ATTORNEY FOR APPELLANT
Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Jodi Kathryn Stein
Deputy Attorneys General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



FILED
Mar 17 2017, 11:06 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

_____

No. 84S01-1606-CR-347

MARVIN BEVILLE,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

_____

Appeal from the Vigo Superior Court 6, No. 84D06-1411-F6-2855
The Honorable Michael J. Lewis, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 84A01-1507-CR-890

_____

**March 17, 2017**

**Rush, Chief Justice.**

The State told Marvin Beville it had a video recording of a controlled drug buy between him and a confidential informant. But while the State offered Beville's public defender the opportunity to review the recording in the prosecutor's office, it would not allow Beville himself to see the video. Beville accordingly requested a copy of the recording, to no avail. His counsel then filed a motion to compel and argued that Beville's personal review of the video was fundamental to preparing a defense. The State responded that the informer's privilege entitled it to withhold disclosing the recording. The trial court agreed with the State, and Beville took this interlocutory appeal.

We acknowledge that when the informer's privilege is properly invoked, the defendant bears the burden to demonstrate an exception to the privilege—otherwise, disclosure of the requested discovery is not warranted. But it is incumbent on the State to establish that the informer's privilege applies in the first instance. We conclude the State failed to make that threshold showing because it is unclear whether the video would actually reveal the informant's identity. And even if the State had made the threshold showing, we find that Beville carried his burden of proving an exception to the privilege because his review of the video was relevant and helpful to his defense. We thus reverse the trial court.

### Facts and Procedural History

The State accused Marvin Beville of selling marijuana to a confidential informant ("CI") and charged Beville with dealing in marijuana and maintaining a common nuisance. At some point, the State informed Beville it had a video recording of a controlled buy between him and the CI.

At the initial hearing, the trial court ordered discovery pursuant to a local rule. Vigo Cty. LR84-CR00-5 (2014). Under that rule, a defendant must specifically request a copy of video evidence; the State must provide the recording for examination and copying at "reasonable" times and places; and the trial court may deny disclosure of a CI's identity if it finds a "paramount interest in non-disclosure." Id.

Shortly after the initial hearing, the State provided discovery. The discovery did not contain the identity of the CI or the recording of the alleged controlled buy, but the State offered to let Beville's public defender review the video at the prosecutor's office.

Beville's counsel then attempted, multiple times, to obtain a copy of the video to review with Beville. He first filed a motion asking for copies of, among other items, all "video tapes . . . which the State of Indiana may use in the prosecution of this matter." The trial court ordered the State to comply with the discovery request. After not receiving a copy of the recording, Beville's counsel filed a motion to compel, asking for "any video of alleged hand to hand buy with the confidential informant."

On the day of the motion to compel hearing, the defense filed an application to obtain a copy of the video. The application asserted that the State intended to use the recording as evidence

2

at trial but would not allow defense counsel to have a copy to review with Beville. At the hearing, defense counsel emphasized that the trial was going to begin in eight days, that the State would likely use the video in lieu of the CI's testimony, and that having a copy of the video was therefore "fundamental to our preparation." He also argued that the video may not reveal the CI's identity because the camera was most likely pointed at the target of the investigation—not at the CI.

In response, the State claimed that the informer's privilege, and the general policies underlying it, allowed withholding the identity of the CI and any item that would identify the CI. The State elaborated that the privilege ensures individuals come forward with information to assist law enforcement and that "disclosure would only serve to make the CI the target for reprisal from those upset by the investigation." The State also asserted that the CI's identity would, in fact, be revealed through the audio and video of the controlled buy.

The trial court denied Beville's motion to compel but did not issue written findings of fact or conclusions of law. On interlocutory appeal, the Court of Appeals affirmed the trial court in a split decision. Beville v. State, 51 N.E.3d 1282, 1285 (Ind. Ct. App. 2016).

The Court of Appeals majority agreed that the State showed a "paramount interest" in withholding the CI's identity "to prevent retaliation and ensure that individuals come forward with information to assist law enforcement." Id. (citing Lewis v. State, 726 N.E.2d 836, 843 (Ind. Ct. App. 2000), trans. denied; Furman v. State, 496 N.E.2d 811, 814 (Ind. Ct. App. 1986)). The majority also noted that Beville's counsel was offered the opportunity to review the video, which it found sufficient to prepare for trial. Id. Judge Brown dissented, arguing that the record did not establish that the video would reveal the CI's identity; that the State failed to prove, through specific facts, its "paramount interest" in non-disclosure; and that Beville himself should have the opportunity to review the key piece of evidence against him. Id. at 1286 (Brown, J., dissenting).

We granted Beville's petition to transfer, thereby vacating the Court of Appeals' decision. Ind. Appellate Rule 58(A).

## Standard of Review

Trial courts have broad discretion on issues of discovery. Hardiman v. State, 726 N.E.2d 1201, 1206 (Ind. 2000) (citing Jenkins v. State, 627 N.E.2d 789, 798 (Ind. 1993)). Accordingly,

discovery rulings—such as rulings on motions to compel—are reviewed for an abuse of that discretion. See id.

## Discussion and Decision

This Court has recognized on multiple occasions that the Indiana Trial Rules "are designed 'to allow liberal discovery.'" Richey v. Chappell, 594 N.E.2d 443, 445 (Ind. 1992) (quoting Chustak v. N. Ind. Pub. Serv. Co., 259 Ind. 390, 395, 288 N.E.2d 149, 152–53 (1972)). Under Trial Rule 26(B), if a defendant makes a specific request for an item that is relevant to his defense and is not privileged, he may obtain discovery of that item. Ind. Trial Rule 26(B)(1). And Trial Rule 34(A) allows the defendant the opportunity not only to inspect the item but also to make a copy of it. T.R. 34(A).

But the Trial Rules also impose certain limits, and when a discovery request is challenged, a court must balance "the need for the information and the burden of supplying it." In re WTHR–TV, 693 N.E.2d 1, 6 (Ind. 1998) (citing Terre Haute Reg'l Hosp., Inc. v. Trueblood, 600 N.E.2d 1358 (Ind. 1992)). Balancing those competing interests is at the heart of this dispute.

Today we must decide whether a criminal defendant is entitled to discovery of a video recording of an alleged controlled buy between him and a CI. Resolving this question requires us to examine general discovery principles applicable to criminal defendants and the more specific principles governing the State's ability to withhold a CI's identity.

I.     **Although Both the Dillard Test and the Informer's Privilege Are Well-Established in Indiana, This Court Has Not Resolved How These Two Frameworks Work Together.**

Shortly after the Indiana Trial Rules took effect, this Court established the Dillard test. This test set a three-part standard for determining whether a criminal defendant's discovery request should be granted: (1) if there is a sufficient designation of the items sought to be discovered (particularity), *and* (2) if the items sought to be discovered are material to the defense (relevance), (3) then the trial court must grant the request unless the State makes a sufficient showing of its "paramount interest" in non-disclosure. See Dillard v. State, 257 Ind. 282, 291–92, 274 N.E.2d 387, 392 (1971); see also Hale v. State, 54 N.E.3d 355, 358 (Ind. 2016) (referring to the tripartite test as the "Dillard test"). Notably, this Court has routinely upheld and used the Dillard test since

4

its implementation over four decades ago. See, e.g., Crawford v. State, 948 N.E.2d 1165, 1168 (Ind. 2011); WTHR–TV, 693 N.E.2d at 6 n.4.

Similarly well-established is the informer's privilege. See, e.g., Schlomer v. State, 580 N.E.2d 950, 954 (Ind. 1991). Under this privilege, Indiana generally withholds the disclosure of evidence that reveals an informant's identity for at least two important policy reasons—preventing retaliation against informants and ensuring individuals come forward with information to help law enforcement. See id.; Beverly v. State, 543 N.E.2d 1111, 1114 (Ind. 1989). The informer's privilege, however, is not absolute: if the accused seeks disclosure, the burden is on him to "demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial." Schlomer, 580 N.E.2d at 954 (citing Mengon v. State, 505 N.E.2d 788, 790 (Ind. 1987)). To meet this burden, the defendant must also show that he is not merely speculating that the information may prove useful.[1] Mays v. State, 907 N.E.2d 128, 131 (Ind. Ct. App. 2009), trans. denied. If the defendant overcomes his burden, the burden shifts to the State to present evidence showing that disclosure is not necessary to the defendant's case or that disclosure would threaten its ability to recruit or use CIs in the future. See, e.g., Williams v. State, 529 N.E.2d 323, 324 (Ind. 1988); Furman, 496 N.E.2d at 814. Then, with both sides' evidence, the trial court must determine whether disclosure is appropriate by balancing "the public interest in encouraging a free flow of information to the authorities with the defendant's interest in obtaining disclosure to prepare his defense." Furman, 496 N.E.2d at 814 (citing Roviaro v. United States, 353 U.S. 53, 62 (1957)). The trial court should not disclose an informant's identity "to permit a mere fishing expedition." Mays, 907 N.E.2d at 131 (quoting State v. Cook, 582 N.E.2d 444, 446 (Ind. Ct. App. 1991)).

---

[1] Several cases have suggested that, to successfully meet the burden in establishing an exception to the informer's privilege, a defendant must also demonstrate that he or she did not know the CI's identity. See, e.g., Mengon, 505 N.E.2d at 790; Davenport v. State, 464 N.E.2d 1302, 1306 (Ind. 1984). We do not believe, however, that a defendant's knowledge of a CI's identity is a proper consideration in this regard—in other words, it does not have an impact when deciding whether a defendant has shown disclosure is relevant and helpful to the defense or necessary for a fair trial. See Smith v. State, 829 N.E.2d 64, 71 (Ind. Ct. App. 2005). The reason for this is straightforward—once the defendant knows the CI's identity, the informer's privilege "cease[s] to exist." Roviaro v. United States, 353 U.S. 53, 60 n.8 (1957); see also Smith, 829 N.E.2d at 71. Logically, the informer's privilege cannot be applicable "once the identity of the informer has been disclosed to those who would have cause to resent the communication." Roviaro, 353 U.S. at 60.

5

Although both the Dillard test and the informer's privilege are firmly rooted in Indiana law, this Court has not squarely considered how they work in tandem. The parties understandably adopt diverging positions on the issue, and their elaborate arguments underscore the importance of establishing a clear guide moving forward.

Beville argues that the informer's privilege does not even apply to this discovery dispute because only the State's bare assertion suggests that the CI's identity would be revealed through the video. Beville points out that nothing in the record reveals that the trial court had reviewed the video recording, the State did not admit the video as an exhibit at the motion to compel hearing, and the State never specifically addressed his argument that the video would likely not reveal the CI's identity. Next, Beville argues that even if the informer's privilege applies, the State failed to carry its burden under the Dillard test because it conceded that he met the first two prongs of the test but it failed to show a "paramount interest" in non-disclosure. He claims that simply asserting the general policy reasons underlying the informer's privilege is insufficient; rather, the State must present evidence on why it needed to withhold the video under the particular facts of the case. Beville contends that the State failed to point to anything in the record showing that he or his associates were violent or that its ability to recruit future informants would be hindered by disclosing the video. In sum, Beville argues that the informer's privilege does not apply here, and even if it did, simply asserting the privilege is insufficient to satisfy a "paramount interest" in non-disclosure under the Dillard test.

The State maintains that the informer's privilege does apply and that, once raised, the burden shifted to Beville to demonstrate that an exception to the privilege requires disclosure of the video. The State argues that, given this burden, Beville should have asked the trial court to view the video *in camera* if he believed the privilege did not apply. The State further contends that Beville ultimately failed to demonstrate that an exception to the informer's privilege warranted disclosure; and that in any event, the State showed that disclosure of the video to Beville was not necessary for trial because his defense counsel had been given an opportunity to review the video at the prosecutor's office. The State does not mention the Dillard test—perhaps believing either that raising the informer's privilege renders the Dillard test inapplicable or that simply raising the privilege automatically satisfies the "paramount interest" prong of the Dillard test.

These complex analyses highlight the competing concerns at play. On one hand, we have a policy of liberal discovery that "favors full disclosure of all relevant facts at trial in order to arrive at a just determination of the issues presented," and on the other, we have a privilege that "dictates exclusion of material and relevant evidence for its effectuation." Collins v. Bair, 256 Ind. 230, 236–37, 268 N.E.2d 95, 98 (1971). With these conflicting interests in mind, we ultimately agree with Beville that the trial court should have granted his motion to compel—but we employ a slightly different legal analysis to reach that result.

II.     **The State Bears the Initial Burden to Demonstrate the Applicability of the Informer's Privilege. If the State Makes That Showing, the Dillard Test Is Inapplicable and the Defendant Must Demonstrate that an Exception Justifies Disclosure.**

Contrary to Beville's proposed approach, we conclude that when the State properly asserts the informer's privilege, the Dillard test is inapplicable. This Court has made clear that the Dillard test "applies only to discover nonprivileged information." In re Crisis Connection, Inc., 949 N.E.2d 789, 794 (Ind. 2011). In other words, when a recognized privilege—such as the informer's privilege—is invoked, the Dillard test is "not reached."[2] Id. Thus, the State need not show a "paramount interest" in withholding evidence revealing a CI's identity, even if a defendant can demonstrate particularity and relevance. Rather, a valid assertion of the informer's privilege shifts the burden to the defendant to demonstrate that disclosure of the requested evidence is either relevant and helpful to his defense or necessary for a fair trial.

However, to successfully assert the informer's privilege in the first instance—and thereby shift the burden to the defendant—the State bears the burden of proving the privilege applies. And when, as here, the applicability of that privilege is not obvious from the criminal defendant's request, the State may not circumvent a Dillard test analysis by simply making a bare assertion that the informer's privilege applies. Rather, the State—as the party seeking to avoid disclosure—

---

[2] We acknowledge that the language of the relevant local rule allows a trial court to deny disclosure of a CI's identity when there "is a paramount interest in non-disclosure of an informant's identity and a failure to disclose will not infringe the Constitutional rights of the accused." Vigo Cty. LR84-CR00-5. Given the reference to "paramount interest," the rule could be read to suggest an interconnectedness between the Dillard test and the informer's privilege. This reading, however, would contravene this Court's earlier holding that the Dillard test is inapplicable when a privilege is properly invoked. We rather interpret the rule as requiring the State to properly invoke the informer's privilege if it seeks to withhold a CI's identity and, if presented with a constitutional challenge on that basis (which was not the situation here), to explain why invoking the privilege would not infringe a defendant's constitutional rights.

"has the burden of establishing the essential elements of the privilege being invoked." Howard v. Dravet, 813 N.E.2d 1217, 1221 (Ind. Ct. App. 2004) (citing Petersen v. U.S. Reduction Co., 547 N.E.2d 860, 862 (Ind. Ct. App. 1989)); see also Hayworth v. Schilli Leasing, Inc., 669 N.E.2d 165, 169 (Ind. 1996); Owens v. Best Beers of Bloomington, Inc., 648 N.E.2d 699, 702 (Ind. Ct. App. 1995) ("The burden to prove the applicability of the privilege is on the one who asserts it.") (citing Colman v. Heidenreich, 269 Ind. 419, 423, 381 N.E.2d 866, 869 (1978)).

Imposing this threshold burden on the State is also mandated by the Indiana Trial Rules. Specifically, Trial Rule 26(B)(5) states as follows:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

T.R. 26(B)(5)(a). Applied to the informer's privilege, this means the State must show that the CI's identity would be revealed if the criminal defendant's discovery request is granted. Often, this goes without saying, as the defendant overtly seeks the identity of the CI. See, e.g., Schlomer, 580 N.E.2d at 953 (involving a defendant's "motion to compel disclosure of the identity and location of the confidential informant"); Beverly, 543 N.E.2d at 1114 (involving a "motion to compel the identity of the confidential informant"); Craig v. State, 273 Ind. 361, 363, 404 N.E.2d 580, 582 (1980) (involving a defendant's request that the trial court "order the undercover police officer to identify the confidential informant"). In cases where the defendant's discovery request would obviously reveal the CI's identity, the State has necessarily made the threshold showing that the informer's privilege is being properly invoked.[3]

---

[3] This opinion does not alter the well-established legal analysis employed when the State properly asserts the informer's privilege. As stated above, once the informer's privilege is properly invoked, the burden shifts to the defendant to show an exception to the privilege—that disclosure is either relevant and helpful to the defense or necessary for a fair trial. E.g., Lewandowski v. State, 271 Ind. 4, 8, 389 N.E.2d 706, 709 (1979). If the defendant can meet this burden, the State then must show that disclosure is not necessary to the defendant's case or that disclosure would threaten its ability to use or recruit CIs in the future. See, e.g., Williams, 529 N.E.2d at 324; Furman, 496 N.E.2d at 814. At that point, the trial court must balance "the respective interests of the State in nondisclosure and the defendant in marshalling a defense." Lewandowski, 271 Ind. at 8, 389 N.E.2d at 709. Importantly, however, requiring the State to show that the privilege applies in the first instance is not novel—Indiana case law and the Trial Rules have been clear

8

But here, the discovery dispute centers around a video recording of an alleged controlled buy and not the identity of the CI. The State has maintained that the CI's identity will be revealed on the video, but we liken that to a bare assertion that the informer's privilege applies. Notably, Beville argued at the motion to compel hearing that the video would likely *not* reveal the CI's identity because in controlled-buy videos the camera is almost always pointed at the target of the investigation, and not the CI. The State did not specifically counter this argument, and as the Court of Appeals' dissenting opinion points out, nothing in the record suggests that the trial court reviewed the video to determine whether the CI's identity would be revealed. Beville, 51 N.E.3d at 1286 (Brown, J., dissenting).

In this circumstance—when it is unknown whether a privilege applies to a particular discovery request—the State could have asked the trial court to review the video *in camera* to make a determination on whether the content contains privileged or non-privileged information. If the trial court finds that the informer's privilege does, in fact, apply, the burden shifts to the defendant to demonstrate an exception to that privilege. See, e.g., Schlomer, 580 N.E.2d at 954; Lewandowski v. State, 271 Ind. 4, 8, 389 N.E.2d 706, 709 (1979). But if the trial court determines that the video's content is non-privileged, then the general Dillard test governs the discovery dispute. See Crisis Connection, 949 N.E.2d at 794. Given that the State failed to meet its threshold burden of establishing the essential elements of the informer's privilege, we conclude that the trial court abused its discretion in denying Beville's motion to compel.

But we hasten to point out that even if the State had established that the video would have revealed the CI's identity, Beville would still have been entitled to a copy of the recording. Once the State properly invokes the informer's privilege, a defendant must establish that he is not merely speculating that the information may prove useful. Mays, 907 N.E.2d at 131. And, most importantly, he must show that disclosure of the evidence either is "relevant and helpful to his

_____

that a party seeking to assert a privilege must prove its applicability from the outset. Prior informer's privilege cases, however, had involved situations where the State automatically met this threshold burden because the defendant's request overtly sought the CI's identity. See, e.g., Schlomer, 580 N.E.2d at 953. As the particular facts of Beville's case demonstrate, however, there may be instances where the State will bear a more onerous burden when seeking to use the informer's privilege.

defense or is necessary for a fair trial." Schlomer, 580 N.E.2d at 954 (citing Mengon, 505 N.E.2d at 790). Here, Beville has carried that burden.

At the motion to compel hearing, defense counsel argued that disclosure to Beville was necessary because the State planned to admit the video recording at trial in lieu of calling the CI to testify and that reviewing the video with his client was "fundamental" to preparing the defense.[4] We agree.

In this case, the video recording was likely a key piece of evidence for the State. In fact, both charges filed against Beville—dealing in marijuana and maintaining a common nuisance—were based on this alleged controlled buy of marijuana from Beville. Furthermore, to prove Beville maintained a common nuisance, the State would need to show that Beville "maintain[ed] a building, structure, vehicle, or other place" for one of the statutorily listed purposes. Ind. Code § 35-48-4-13(b) (2014). To prepare a defense against these charges, it seems axiomatic that viewing the video would be both relevant and helpful. Here, it is essential that Beville review the video with his counsel because Beville is in the best position to point out whether he is actually the target depicted in the video and to explain the relation he has to the location of the alleged buy. Moreover, if Beville is not afforded the opportunity to examine the evidence against him with his own counsel, it is unlikely that Beville will understand the strength of the State's case against him and the attendant consequences.[5] Therefore, allowing Beville's counsel to review the video without Beville is insufficient under these circumstances.

---

[4] At oral argument, the State maintained that at the motion to compel hearing Beville's counsel focused only on whether he could bring in an expert to authenticate the video recording and whether he, as defense counsel, would be able to see what would be presented to the jury. In other words, the State contended that Beville's counsel never argued that Beville also should be able to view the video. Our review of the record reveals otherwise.

[5] The State concedes that the video recording "is highly relevant evidence to the charges" against Beville, but it argues that Beville failed to show that disclosure of the *CI's identity* was relevant and helpful to his defense. We appreciate this subtle distinction but are not swayed by the State's argument. If a criminal defendant makes a discovery request, and the State properly invokes the informer's privilege, it is sufficient for the defendant to demonstrate why the subject of the discovery request is relevant and helpful to his defense. He need not make a separate showing as to why a CI's identity, which could be incidentally revealed if his request is granted, is also relevant and helpful to his defense. We point out, however, that often the defendant's discovery request overtly seeks the identity of the CI; thus, in those instances, a criminal defendant will necessarily have to focus his argument on the relevance and helpfulness of the CI's identity.

After Beville demonstrated that an exception to the informer's privilege applies, the burden was on the State to show that disclosure was not necessary to Beville's case or that disclosure would threaten its ability to use or recruit CIs in the future. See, e.g., Williams, 529 N.E.2d at 324; Furman, 496 N.E.2d at 814. The State never offered anything case specific to satisfy this burden; it instead consistently referred to the general policy reasons underlying the informer's privilege— to prevent retaliation against CIs and to ensure that individuals come forth with information to assist law enforcement officials. There is no question that those policy reasons are important and are essentially the reasons the informer's privilege exists. But at this point, after Beville demonstrates that an exception to the privilege applies, the State must show why disclosure of this specific video is not necessary. To overcome this burden in a particular case, the State may submit evidence, for example, that the CI played a merely tangential role, that the CI's safety would be in danger, that the defendant or his associates have a violent or threatening history, or that it would be difficult for the State to use or recruit CIs in the future. The State, however, presented no evidence in this regard. Rather, it remains unanswered why withholding the video recording from Beville is critical at this stage, given that the State plans to show it to everyone in the courtroom, including Beville, during trial.

**Conclusion**

Because the State did not carry its threshold burden in establishing that the informer's privilege applied to Beville's discovery request, the State was not entitled to withhold disclosing the video recording. Accordingly, we reverse the trial court's denial of Beville's motion to compel.

Rucker, David, Massa, and Slaughter, JJ., concur.

11