## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Lavon Ackles,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 14, 2018

Court of Appeals Case No.
18A-CR-846

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1612-F2-46192

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Robert Ackles (Ackles), appeals his conviction for one Count of dealing in a narcotic drug, a Level 2 felony, Ind. Code § 35-48-4-1(a)(2); two Counts of possession of a narcotic drug, Level 3 felonies, I.C. § 35-48-4-6(d); and one Count of possession of a marijuana, a Class B misdemeanor, I.C. § 35-48-4-11(a)(1).

We affirm.

# ISSUE

Ackles presents one issue on appeal, which we restate as the following: Whether the trial court abused its discretion by denying Ackles' pretrial motion to compel the State to disclose the identity of its confidential informant.

# FACTS AND PROCEDURAL HISTORY

Between November 1, 2016, and November 3, 2016, Detective Patrick Bragg (Detective Bragg) and Detective Andrew Deddish (Detective Deddish) of the Indianapolis Metropolitan Police Department (IMPD), met with a confidential informant for the "purposes of attempting to purchase methamphetamine from a male known as 'Black' from a residence located "at 1260 King Ave, Indianapolis, IN 46222." (Appellant's App. Vol. II, p. 106). Prior to the buy, the confidential informant was searched and furnished with "buy money." (Appellant's App. Vol. II, p. 106). The detectives then followed the confidential informant to the residence located at 1260 King Avenue. Other assisting detectives strategically parked their vehicles at points to observe the transaction.

Detective Bragg observed the confidential informant speaking with a man known to him as Ackles and known to the confidential informant as "Black." (Appellant's App. Vol. II, p. 106). "After approximately 2 minutes, Detective Bragg and Deddish observed . . . Ackles use a key to open the front door" of the 1260 King Avenue residence. (Appellant's App. Vol. II, p. 106). Ackles was inside the house for about "30 seconds," and when he exited, he "approached the confidential informant." (Appellant's App. Vol. II, p. 106). The confidential informant thereafter left and met the detectives at a pre-determined location without making any stops along the way. Reiterating the events of the controlled buy, the confidential informant informed the detectives that a male, known to "him/her" as Black, unlocked the front door of the residence and retrieved "a quantity of methamphetamine in exchange for the IMPD buy money." (Appellant's App. Vol. II, p. 106).

[5] Between November 8, 2016, and November 10, 2016, Detective Bragg met with the confidential informant to conduct a second controlled buy from Ackles. After a search, the detectives equipped the confidential informant with buy money and "an audio transmitting device." (Appellant's App. Vol. II, p. 106). Detectives Bragg and Deddish, and other detectives, followed the confidential informant to Ackles' residence at 1260 King Avenue to conduct a surveillance of the drug transaction. This time, the confidential informant was welcomed into the residence by an "unknown individual." (Appellant's App. Vol. II, p. 108). After approximately five minutes, the confidential informant left Ackles' house and met the detectives at a predetermined location and gave the

detectives a "quantity of methamphetamine" that he had purchased from Ackles. (Appellant's App. Vol. II, p. 108).

[6] Between November 26, 2016, and November 28, 2016, Detective Bragg met with the confidential informant to conduct a third controlled buy from Ackles. As before, the confidential informant was provided with drug money and outfitted with a wire intercept device. Consistent with the first and second controlled buys, the detectives followed the confidential informant to Ackles' residence. The confidential informant was inside Ackles' house for approximately eleven minutes, and after the confidential informant left, he/she met the detectives at a prearranged location. At the location, the confidential informant stated that Ackles had given him a quantity of methamphetamine in exchange for the buy money.

[7] On November 29, 2016, Detective Bragg requested a No-Knock Search Warrant to search the residence at 1260 King Avenue for drugs, buy money, firearms, and other related items. In the supporting affidavit, Detective Bragg repeated the three controlled buys and averred that the confidential informant had seen Ackles with "a firearm and wearing a bullet resistant vest in the past." (Appellant's App. Vol. II, p. 110). Detective Bragg added that during "controlled buy[s] #2 and #3, the confidential informant stated that . . . Ackles . . . had a firearm on his lap and two other firearms were observed on separate tables in the residence." (Appellant's App. Vol. II, p. 110). In further support, Detective Bragg attested that Ackles is "currently on parole" and his "arrest poses a threat to law enforcement" since he was "more likely to employ

dangerous measures to avoid apprehension." (Appellant's App. Vol. II, p. 110).

[8]     On the same day, a magistrate issued the warrant. Prior to the execution of the warrant and the arrival of other officers and the SWAT team, Detective Bragg and Detective Deddish conducted a surveillance of Ackles' home for about two hours. During that period, the detectives saw two males walk up to the porch of the 1260 King Avenue residence. The SWAT team arrived at the same time the men were arriving and ordered the men to lay on the ground. Upon seeing that, Detective Bragg and Detective Deddish exited their undercover vehicle and followed the SWAT team inside the house. Ackles and another male were found inside and escorted out of the house. Although it was about sixty-one degrees outside, Ackles requested Detective Deddish to hand him a grey sweatshirt that was on a recliner. When Detective Deddish lifted the sweatshirt, there was a "Glock .27 pistol" underneath. (Tr. Vol. II, p. 197). During the search, mail addressed to Ackles was found inside the home. In several locations inside Ackles' home, the officers found several controlled substances which included suboxone, buprenorphine, oxycodone, hydrocodone, methamphetamine, twenty-two grams of marijuana, and twenty-eight grams of heroin.

[9]     On December 2, 2016, the State filed an Information, charging Ackles with Count I, dealing in a narcotic drug, a Level 2 felony; Counts II-III, possession of a narcotic drug, Level 3 felonies, Count IV, possession of methamphetamine, a Level 5 felony; and Count V, possession of marijuana, a Class B

misdemeanor. The State also filed an habitual offender charge alleging that Ackles had accumulated at least two prior unrelated felony convictions.

[10] On August 30, 2017, prior to his trial, Ackles filed a Motion to Reveal the Identity of the Confidential Informant. Ackles argued that without the identity of the confidential informant, he was unable to prepare his defense. On the same day, the State filed its response, arguing that the informant's role was minimal in achieving the No-Knock Search Warrant. Specifically, the State argued, that while it had utilized a confidential informant in the "three controlled buys that led to the search warrant, [] those buys were not criminally charged." (Appellant's App. Vol. II, p. 94). Further, the State argued that it did not intend to subpoena the confidential informant to testify against Ackles.

[11] On September 12, 2017, a hearing was conducted on Ackles' motion. After the parties' arguments, the trial court then took the matter under advisement. On September 22, 2017, the trial court denied Ackles' motion to compel discovery.

[12] On February 27, 2018, through February 28, 2018, the trial court conducted a bifurcated jury trial. The first phase of the trial involved all charges except the habitual offender charge. At the close of the evidence, the jury found Ackles guilty of Count I, dealing in a narcotic drug, a Level 2 felony; Counts II and III, possession of a narcotic drug, Level 3 felonies; and Count V, possession of a marijuana, a Class B misdemeanor. During the second phase, a bench trial was conducted since Ackles had waived his right to a jury trial. During the hearing, the State presented evidence of Ackles' prior unrelated felony convictions in

relation to the habitual offender charge. At the close of the evidence, the trial court adjudicated Ackles as a habitual offender.

[13] On March 21, 2018, the trial court conducted a sentencing hearing. The trial court merged Count III with Count I and then ordered Ackles to serve seventeen years in the Department of Correction. That sentence was enhanced by six years due to the habitual offender finding. Also, the trial court sentenced Ackles to six years for Count II, and 180 days for Count V. Ackles' sentences were to run concurrently, for an aggregate sentence of twenty-three years.

[14] Ackles now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[15] Ackles contends that the trial court abused its discretion in denying his pretrial motion to compel the State to disclose the identity of its confidential informant.

[16] Even before we address Ackles' claim, we note that "a party waives an issue on appeal by making no mention at trial of the grounds asserted on appeal." *Cadiz v. State*, 683 N.E.2d 597, 598 (Ind. Ct. App. 1997). Ackles has therefore waived his claim for review. Ackles did not file an interlocutory appeal from the trial court's adverse ruling. Also, during the first phase of Ackles' trial, the trial court proceeded without any objections on grounds relating to the confidential informant's identity or why that disclosure remained important in the preparation of Ackles' defense. Waiver aside, we address his claim.

[17]     In *Beville v. State*, 71 N.E.3d 13, 19 (Ind. 2017), our supreme court recently held that

> Indiana generally withholds the disclosure of evidence that reveals an informant's identity for at least two important policy reasons—preventing retaliation against informants and ensuring individuals come forward with information to help law enforcement. The informer's privilege, however, is not absolute: if the accused seeks disclosure, the burden is on him to demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial. To meet this burden, the defendant must also show that he is not merely speculating that the information may prove useful. If the defendant overcomes his burden, the burden shifts to the State to present evidence showing that disclosure is not necessary to the defendant's case or that disclosure would threaten its ability to recruit or use [confidential informants] in the future. Then, with both sides' evidence, the trial court must determine whether disclosure is appropriate by balancing the public interest in encouraging a free flow of information to the authorities with the defendant's interest in obtaining disclosure to prepare his defense. The trial court should not disclose an informant's identity to permit a mere fishing expedition.

(citations and quotation marks omitted).

[18]     At the evidentiary hearing, Ackles' attorney argued that there "was no compelling need to keep the identity of the informant secret as there has been no real evidence" that there was a "safety issue." (Tr. Vol. II, p. 13). Ackles' attorney continued to argue, "[S]o what we're asking the [c]ourt to do is order the State to reveal the confidential informant's identity to us for the purpose of discovery so that we can conduct complete discovery on behalf of Mr. Ackles."

(Tr. Vol. II, p. 15). On appeal, Ackles argues that the confidential informant's role was "neither marginal nor incidental. [It was] central. In withholding the [confidential informant's] identity, the trial court abused its discretion and utterly and materially damaged [his] ability to defend himself." (Appellant's Br. p. 9). The State argues that Ackles' arguments on appeal are the type of arguments disfavored by Indiana's general policy preventing disclosure of an informant's identity, and his contentions do not establish how he was prejudiced by the trial court's refusal to order disclosure of the confidential informant's identity.

[19] Turning to the record, we note that the basis of the No-Knock Search Warrant for Ackles' residence at 1260 King Avenue was the information contained in Detective Bragg's probable cause affidavit. In *Methene v. State*, 720 N.E.2d 384, 387 (Ind. Ct. App. 1999), we explained the process of a controlled buy:

> A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

So long as the "controls are adequate, the affiant's personal observation of a controlled buy may be sufficient as grounds for finding probable cause." *Id*. at 390.

[20]     Although a confidential informant was used to effectuate the controlled buys of methamphetamine in November 2016, Detective Bragg outlined sufficient details in the probable cause affidavit that the controlled buys were valid. Therefore, we find that the informant's identity had little relevance because probable cause to search was not simply based on the uncorroborated statements or credibility of the confidential informant. Instead, Detective Bragg stated that he personally observed the controlled buys which provided him probable cause to search Ackles' residence. Simply put, the confidential informant's statements and/or credibility did not play a substantial role in the issuance of the No-Knock Search Warrant.

[21]     As stated, the informer's privilege, however, is not absolute: if the accused seeks disclosure, the burden is on him to demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial. *Beville,* 71 N.E.3d at 19. To meet this burden, the defendant must also show that he is not merely speculating that the information may prove useful. *Id*. Here, Ackles did not meet his burden to show how disclosure of the confidential informant's identity would have been relevant and helpful to his defense or was necessary for a fair trial. While Ackles argues that the informant provided *material information* underlying the search warrant affidavit and that without the informant's identity, he was unable to prepare his defense, the confidential informant had little relevance because probable cause to search was not simply based on the uncorroborated statements or credibility of the confidential informant. As such, Ackles' request for disclosure appears to have been simply a fishing expedition,

and that does not suffice. Ackles did not meet his burden, and therefore the trial court did not abuse its discretion in denying his pretrial motion to compel the State to disclose the identity of its confidential informant.

# CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Ackles' pretrial motion to compel the discovery of the informant's identity.

Affirmed.

Vaidik, C. J. and Kirsch, J. concur