## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 02 2020, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean R. Moore
Baldwin Perry & Kamish, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin Ladell Robinson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | October 2, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2812<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Jennifer Harrison, Judge<br><br>Trial Court Cause No.<br>49G20-1802-F2-5943 |

**Robb, Judge.**

# Case Summary and Issues

[1]   In this interlocutory appeal, Kevin Ladell Robinson appeals from the denial of his motion to compel disclosure of audio recordings of two controlled drug buys that led to a search warrant and ultimately numerous narcotics-related criminal charges against him and from the grant of the State's motion for a discovery protective order. Robinson raises the issue of whether the trial court abused its discretion in denying his motion to compel and granting the State's motion for discovery protective order. The State raises one issue on cross-appeal, which we restate as whether the trial court abused its discretion in certifying its discovery order for interlocutory appeal. Concluding the trial court did not abuse its discretion in certifying its order or in denying Robinson's motion to compel, we affirm.

# Facts and Procedural History

[2]   Narcotics Detective James Smith of the Indianapolis Metropolitan Police Department ("IMPD") was advised by a confidential informant ("CI") that an older black male was selling heroin from a residence located on N. Eastern Avenue in Indianapolis. Detective Smith arranged for the CI to conduct two controlled buys at the residence between February 7 and February 10, 2018. The CI was equipped with a device that both transmitted and recorded audio during each buy and IMPD provided the CI with recorded "buy" money for the transactions. After both controlled buys, the CI informed Detective Smith that

an older black male the CI knew as "Ladell Robinson" answered the door of the residence and provided the heroin in exchange for the "buy" money.

[3] Following some research, Detective Smith identified Robinson as the older black male involved in the controlled buys and learned that Robinson was on electronic monitoring at the residence. On February 14, Detective Smith showed the CI a photo line-up and the CI identified Robinson as the individual who sold them the heroin during each controlled buy. Based on this information, Detective Smith applied for and was granted a search warrant to search the residence for narcotics, seize various items, and arrest Robinson.

[4] On February 15, Detective Smith, with the assistance of IMPD SWAT and Northwest District Narcotics Unit, executed the warrant. Inside the residence, officers located and detained three individuals, including Robinson, and discovered and seized (among other things) 49.43 grams of marijuana, 96.28 grams of cocaine, 86.93 grams of heroin, 27.02 grams of methamphetamine, more than thirty oxycodone/hydrocodone tablets, and $8,817 in cash. Robinson was placed under arrest.[1]

[5] The State charged Robinson with dealing in a narcotic drug, dealing in methamphetamine, and dealing in cocaine, all Level 2 felonies; possession of methamphetamine, possession of cocaine, and possession of a narcotic drug, all

---

[1] With respect to the other two detainees, one was arrested for visiting a common nuisance; however, the probable cause affidavit does not indicate that the other detainee was arrested.

Level 3 felonies; dealing in marijuana, a Level 6 felony; and possession of marijuana, a Class A misdemeanor. The State also alleged Robinson was an habitual offender. The State did not, however, charge Robinson with any crime related to the controlled buys.

[6] On August 31, defense counsel e-mailed the assigned prosecutor requesting the audio recordings of the controlled buys. Weeks later, defense counsel reached out again and requested to listen to the recordings at the prosecutor's office. The deputy prosecutor stated he would be willing to provide a five second clip of the recordings for the defense. Detective Smith "redacted [the recordings] so that Defense Counsel could hear [Robinson]'s voice in the recording without any risk of revealing the CI's identity." Appellant's Appendix, Volume II at 76.

[7] On September 25, Robinson filed a motion to compel discovery to obtain a copy of the complete audio recordings of the controlled buys that ultimately led to the search warrant. Robinson argued that the buys "were the entire basis for the search warrant that was issued in this case, and the charges are based entirely on suspected narcotics and contraband seized pursuant to that warrant; as such, the recordings are both highly relevant and necessary for an effective defense." *Id.* at 99. In response, the State filed a motion for a discovery protective order requesting that the trial court deny disclosure of the audio recordings for several reasons: (1) the controlled buys were "uncharged conduct"; (2) Robinson did not allege any material representations, omissions, or untruths contained in the affidavit; (3) Robinson failed to demonstrate that the recordings are material to the preparation of his defense; and (4) disclosure

of the recordings would lead to the disclosure of the CI's identity. *See id.* at 92-95.

[8] In addition, the State attached an affidavit from Detective Smith detailing the risk of compromising the CI's identity by disclosing the audio recordings of the controlled buys, which would endanger the CI and compromise other investigations. *See id.* at 76-77. The State also tendered a brief in support of its position that it has an interest in protecting the CI's identity and that disclosure of the audio recordings

> could identify the exact date and time of the controlled buys . . . , the informant's gender, possibly the informant's race, any identifying physical features of the informant or any [identifying] voice characteristics, and the vehicle used by the [CI]. This information will be revealed by the defense attorney's review of any audio recordings of these uncharged controlled buys, which law enforcement sought to prevent in the manner in which the search warrant affidavit was written.

*Id.* at 70.

[9] A hearing was held on October 17 during which defense counsel stated she wanted to listen to the audio recordings, outside the presence of Robinson, to challenge the search warrant. The State responded that "at no point has defense done any depositions which . . . would be a good starting point if they were interested in pursuing anything involving the search warrant and questions they have there[.]" Transcript of Evidence, Volume II at 8. The defense acknowledged that it intended to depose Detective Smith but believed doing so

prior to listening to the audio "would be putting the cart before the horse" and it wanted to avoid multiple depositions. *Id.* at 9. Ultimately, the trial court denied Robinson's motion to compel and granted the State's motion for a discovery protective order. Detective Smith was deposed on April 3, 2019.

[10] In July 2019, Robinson filed a motion to suppress the evidence seized during the execution of the search warrant. Robinson challenged the affidavit supporting the warrant and argued that the CI's allegation that an older black male was selling narcotics at the residence was not adequately corroborated by independent investigation. The trial court denied the motion.

[11] On September 3, Robinson filed a Renewed Motion to Compel disclosure of the audio recordings. Robinson argued that he deposed Detective Smith but aside from the audio recordings "there [was] virtually nothing memorialized to corroborate the existence of the CI, to document the investigation that was performed prior to the controlled buys, or to verify that the controlled buys were done according to acceptable procedures with appropriate safeguards." Appellant's App., Vol. II at 44-45. Instead, Robinson claimed that the audio recordings constituted "the sole piece of evidence" capable of corroborating the contents of the probable cause affidavit and noted Detective Smith stated the recordings do not contain any of the CI's identifying information aside from the CI's voice. *Id.* at 45. The State subsequently filed a Renewed Motion for

Discovery Protective Order to prevent disclosure of the recordings.[2] On September 27, the trial court denied Robinson's renewed motion to compel and granted the State's motion for a protective order.

[12] A final pre-trial conference was held on October 2 during which Robinson asked the trial court to reconsider its decision, stating he simply wanted his attorney to verify that it was his voice on the audio recordings. The State responded that the defense already deposed Detective Smith regarding the controlled buys, the trial court previously determined probable cause supported the search warrant, and the warrant was granted to search the residence based on the controlled buys at the location and "ha[d] nothing to do with the fact that . . . Robinson did or did not sell to the CI." Tr., Vol. II at 18. The trial court agreed with the State and denied the motion. Robinson noted that he would be asking for leave to file an interlocutory appeal, which the trial court indicated it would grant. The State did not object and the parties agreed to continue the jury trial set for October 7.

[13] On October 25, Robinson filed a motion to certify for interlocutory appeal the trial court's orders of October 17, 2018 denying his first motion to compel, September 27, 2019 denying his renewed motion to compel, and October 2, 2019 denying his motion to reconsider and to stay the proceedings pending the

---

[2] In its motion, the State asked that the trial court take notice of and include in its consideration the State's previous filings related to its initial Motion for Discovery Protective Order, including its motion, supporting memorandum of law, and affidavit of Detective Smith. *See id.* at 30.

outcome. The trial court granted the motion three days after Robinson filed the motion and before the State had an opportunity to respond. This court subsequently accepted jurisdiction. Robinson now appeals, challenging the trial court's denial of his renewed motion to compel, and the State cross-appeals, claiming the trial court erred in certifying its discovery orders for interlocutory appeal.

# Discussion and Decision

## I. Cross-Appeal: Motion to Certify

A threshold issue we must address before considering the merits of Robinson's appeal is whether this case is properly before us. *See DuSablon v. Jackson Cnty. Bank,* 132 N.E.3d 69, 75 (Ind. Ct. App. 2019) ("It is the duty of this Court to determine whether we have jurisdiction before proceeding to determine the rights of the parties on the merits.") (quotation omitted), *trans. denied*.

We review a trial court's grant or denial of a motion to certify an order for interlocutory appeal for an abuse of discretion. Ind. Appellate Rule 14(B). An abuse of discretion occurs when the trial court's decision to certify is clearly against the logic and effect of the facts and circumstances before it or the reasonable and probable deductions to be drawn therefrom. *State v. Fahringer*, 132 N.E.3d 480, 484 (Ind. Ct. App. 2019), *trans. denied*.

This case is controlled by Indiana Appellate Rule 14(B), which governs discretionary interlocutory appeals. *Wise v. State*, 997 N.E.2d 411, 412 (Ind. Ct.

App. 2013). "An appeal may be taken from other interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." App. R. 14(B). The rule provides for a two-step process to initiate a discretionary interlocutory appeal. *Wise*, 997 N.E.2d at 413. First, the trial court must certify its order for interlocutory appeal, and second, if the trial court does so, this court may accept interlocutory jurisdiction over the case. *Id.* The party seeking certification must generally file a motion requesting certification from the trial court within thirty days after the date the interlocutory order is noted in the Chronological Case Summary ("CCS"). App. R. 14(B)(1)(a). However, a trial court may permit a belated motion for good cause. *Id.*

[17] The State contends the trial court erred by certifying "its denials of Robinson's repetitive motions" to compel because they were untimely. Brief of Appellee at 14. It argues that Robinson's *first* motion to compel disclosure of the audio recordings was denied on October 17, 2018 and therefore, Robinson had until November 16, 2018 to file a motion for certification of the trial court's order for interlocutory appeal *or* to thereafter show good cause for a belated motion. Instead, it contends, "Robinson chose to renew his motion . . . more than nine months later, on September 3, 2019[,]" which the trial court denied on September 27, and at a hearing on October 2, Robinson orally requested that his motion be reconsidered but the trial court declined. *Id.* at 15. "It was only after the third denial, which occurred over a year after the first decision on the discovery issue, that Robinson filed a motion to certify the trial court's three denials of his motions[,]" making it untimely. *Id.* We are unpersuaded by the

State's argument that Robinson's renewed motion constituted a "repetitive" motion rendering his subsequent motion to certify untimely.

[18] Although both motions to compel sought the same relief – disclosure of the audio recordings – and relied on similar theories, they were filed at different stages of the discovery process and therefore, Robinson's motion to certify was not untimely. Instead, after the denial of the first motion, Robinson deposed Detective Smith and unsuccessfully challenged the search warrant affidavit in a motion to suppress; however, he believed he still had unanswered questions regarding the affidavit which he claimed could only be corroborated by the recordings. Therefore, in light of new discovery developments, the trial court had new information to consider in rendering its decision. *See Gibson v. Evansville Vanderburgh Bldg. Comm'n*, 725 N.E.2d 949, 952 (Ind. Ct. App. 2000) (concluding that a motion for summary judgment was not repetitive of a prior motion to dismiss because "the motions, although based on the same theories, required the trial court to examine different evidence in order to make the determination as to whether the defendants were entitled to judgment as a matter of law"), *trans. denied*.

[19] Here, the trial court's order denying Robinson's renewed motion to compel was noted in the CCS on September 27, 2019.[3] Robinson filed his Petition to Certify an Order for Interlocutory Appeal on October 25, 2019, within the

---

[3] Although Robinson sought certification of the three orders and the trial court said it was certifying the three orders, the only order properly subject to certification is the September 27, 2019 order.

thirty-day period allowed for seeking certification of an interlocutory order. Therefore, Robinson's motion was timely filed, and the trial court did not abuse its discretion in certifying its order for interlocutory appeal.

## II. Denial of Renewed Motion to Compel

[20] Having concluded this case is properly before us, we now address the merits of Robinson's argument and evaluate whether the trial court abused its discretion when it denied his renewed motion to compel disclosure of the audio recordings. We conclude the trial court did not err.

[21] Trial courts are afforded broad discretion on issues of discovery. *Beville v. State*, 71 N.E.3d 13, 18 (Ind. 2017). "Accordingly, discovery rulings – such as rulings on motions to compel – are reviewed for an abuse of that discretion." *Id.*

[22] The parties dispute whether the informer's privilege is applicable in this case. Under this well-established privilege, the disclosure of evidence that reveals an informant's identity is generally withheld to prevent retaliation against informants and to ensure individuals come forward with information to assist law enforcement. *Id.* at 19. The privilege is not absolute, *id.*, and "to successfully assert the informer's privilege in the first instance – and thereby shift the burden to the defendant – the State bears the [threshold] burden of proving the privilege applies" by showing that the CI's identity *would be revealed* if the discovery request is granted, *id.* at 21. When a defendant seeks disclosure, he bears the burden of demonstrating that "disclosure is relevant and helpful to his defense or is necessary for a fair trial." *Schlomer v. State*, 580 N.E.2d 950,

954 (Ind. 1991). "[B]are speculation that the information may possibly prove useful is not enough to justify the disclosure of a [CI]'s identity, and an informant's identify shall not be disclosed to permit a mere fishing expedition." *Mays v. State,* 907 N.E.2d 128, 131 (Ind. Ct. App. 2009) (internal quotations omitted), *trans. denied.* If the defendant meets its burden, the burden shifts back to the State to show that disclosure is not necessary to the defendant's case or that disclosure would threaten its ability to recruit or use CIs in the future. *Beville*, 71 N.E.3d at 19. The trial court must then evaluate the parties' evidence and determine whether disclosure is appropriate "by balancing the public interest in encouraging a free flow of information to the authorities with the defendant's interest in obtaining disclosure to prepare his defense." *Id.* (internal quotation omitted).

[23] However, when a defendant seeks disclosure of non-privileged information, courts apply the *Dillard* test, a three-part standard set forth in *Dillard v. State*, 257 Ind. 282, 274 N.E.2d 387 (1971), to determine whether the discovery request should be granted: "(1) if there is a sufficient designation of the items sought to be discovered (particularity), *and* (2) if the items sought to be discovered are material to the defense (relevance), (3) then the trial court must grant the request unless the State makes a sufficient showing of its 'paramount interest' in non-disclosure." *Beville*, 71 N.E.3d at 18-19. We conclude the informer's privilege is not applicable and disclosure was not required under the *Dillard* test.

[24] Robinson argues that the State failed to make the threshold showing that the informer's privilege applied. *See* Brief of Appellant at 11. The State argues the

privilege applies because disclosure of the audio recordings would reveal the CI's identity by revealing the date and time of the buys, the CI's voice, gender, and vehicle. Therefore, the State contends, "[c]ommon sense dictates that if [Robinson] could glean information pinpointing the time of the drug transaction, the gender of the buyer, and the vehicle . . . from the audio recordings, he could likely narrow down the visitors to his residence and determine the identity of the [CI]." Br. of Appellee at 18-19. Detective Smith stated there was no information in the audio identifying the CI aside from the CI's voice and we have concerns that adopting the State's position would, in essence, authorize the blanket non-disclosure of any and all communications in which one could *potentially* identify a CI or discern enough information through context, voice or other characteristics to determine the CI's identity. And given these concerns, we decline to embrace that theory here and conclude the State failed to meet its threshold burden to invoke the informer's privilege.

[25] Nonetheless, Robinson seeks disclosure of the audio recordings for the purpose of confirming that the controlled buys did, in fact, occur and to determine whether his voice can be heard on the recordings. *See* Br. of Appellant at 7, 9. However, Detective Smith's affidavit indicated that he and the CI conducted two controlled buys, the audio of which was recorded, and Detective Smith subsequently "redacted [the recordings] so that Defense Counsel could hear [Robinson]'s voice in the recording without any risk of revealing the CI's identity." Appellant's App., Vol. II at 76. At the hearing on Robinson's first motion to compel, defense counsel stated that allegedly, in this five second clip,

one can hear a person say "oh, yeah" with no other information. Tr., Vol. II at 7. Robinson does not claim that the five second redacted recording was not part of the audio recordings of the controlled buys or that the voice in the redacted recording was not his. If necessary, the trial court could, as Robinson has suggested, listen to the audio in camera to determine if there are legitimate concerns as to whether Robinson's voice can be heard on the audio.

[26] Ultimately, even if the State met its threshold showing to assert informer's privilege, Robinson has failed to demonstrate how the audio recordings of controlled buys for which he was not charged are relevant and helpful to the preparation of his defense as to whether or not he possessed narcotics with the intent to deliver at the time the search warrant was executed. *See* Ind. Code §§ 35-48-4-1, -10. The State made it clear that Robinson was not charged with any crime related to the controlled buys and the audio recordings will not be admitted at his trial. *Cf. Beville*, 71 N.E.3d at 22-23 (stating that video footage of controlled buys between the defendant and a CI, for which the defendant *was* charged, constituted a "key piece of evidence" for the State's case and therefore, disclosure of the video would be relevant and helpful to the defendant's defense). For the same reasons, Robinson also cannot prove that the audio recordings are material to his defense compelling disclosure under the *Dillard* test. Therefore, we conclude the trial court did not abuse its discretion in denying Robinson's motion to compel disclosure of the audio recordings of the controlled buys.

# Conclusion

The trial court did not abuse its discretion in certifying its order for interlocutory appeal or in denying Robinson's motion to compel. Accordingly, we affirm.

Affirmed.

May, J., and Vaidik, J., concur.