Marceilus ABEL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S00–0011–CR–709.

Supreme Court of Indiana.

Aug. 20, 2002.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

Marceilus Abel was convicted of murder and carrying a handgun without a license for which he was sentenced to an aggregate term of sixty-five years. In this direct appeal, Abel raises two issues for our review, which we rephrase as: (1) did the trial court err in denying Abel's motion to suppress evidence; and (2) did the trial court err in failing to find relevant mitigating factors when imposing sentence. Finding no error, we affirm.

### Facts

The facts most favorable to the verdict show that in the evening hours of January 7, 2000, Sam Turner and Michelle Sullivan went to a house on Rural Street in Indianapolis to purchase cocaine. While there, they purchased the drugs from a person known to them by a nickname and later identified as Abel. Running out of money but wanting more drugs, the couple left to get additional funds. They unsuccessfully attempted to obtain money from an ATM machine. Ultimately, Turner borrowed $120.00 from his employer and returned to the Rural Street address. Although the record is unclear, it appears that Turner gave Abel $120.00 for drugs but owed him an additional $40.00. Abel began demanding the $40.00 and produced a handgun to show Turner that he was serious. Saying that he could get the money from an ATM machine, Turner left the house. Abel followed. A few minutes later, Sullivan heard something that "sounded like a car backfiring, or a gun popping off . . . ." R. at 816. Shortly thereafter, a security guard discovered Turner slumped over in the driver's seat of his car. He was rushed to the hospital but later died as a result of a single gunshot wound to the

chest. A shell casing was found in close proximity to the car.

In the meantime, in what appeared to be an unrelated incident, Abel was arrested for resisting law enforcement and carrying a handgun without a license. Subsequent tests revealed that the bullet retrieved from Turner's body during an autopsy and the shell casing found near the scene were fired from the same handgun seized from Abel during a pat-down search for weapons. Abel was eventually arrested and charged with murder and carrying a handgun without a license. After a trial by jury, he was convicted as charged and later sentenced to an aggregate term of sixty-five years. This appeal followed. Additional facts are set forth below.

### Discussion

### I.

■ Abel filed a pre-trial motion to suppress as evidence the handgun officers seized from him. After a hearing, the trial court denied the motion. At trial, the handgun was introduced into evidence over Abel's timely objection. He claims error contending the search and seizure violated the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution.[1] According to Abel, his Fourth Amendment right to be free from unreasonable searches and seizures was violated when officers conducted a pat-down search for weapons.

The facts are these. In the early morning hours of January 8, 2000, Indianapolis Police Officer Charles Lewis was on routine patrol in the Rural Street area when he observed a car driving with its bright lights on. Because this was an infraction,[2] the officer decided to make a routine traffic stop and give the driver a ticket. He followed the car at a distance and watched as it pulled into a store parking lot. The store was not yet open for business. Officer Lewis observed one of the two passengers exit and engage a third party in an animated conversation. As the officer approached, both persons fled the scene, and the car drove away. Officer Lewis then decided to investigate further and signaled the car to pull over. The driver initially complied, but as the officer exited his patrol car, the driver abruptly sped away. The officer pursued and radioed for assistance announcing that he thought a possible robbery had been or was about to be committed. When the car eventually crashed in an alley, both the driver and the passenger fled on foot. Officer Lewis ran after the driver and radioed a description of the clothing and a physical description of the passenger.

Fellow officers Daryl Patton and Matthew Stevenson were on patrol when they heard the radio dispatch and observed a man in the immediate area matching the description. He was walking along the street and immediately approached a house where he knocked on the door. When asked his business at the house, the man replied it was the home of a friend. Later investigation revealed that the owner of the house was not acquainted with the man, who was later identified as Abel. In any event, the officers told Abel to approach the squad car and began a pat-down search for weapons. As they did so, the officers asked if he was armed, to which he responded affirmatively. The officers then seized a handgun from Abel's waistband. Later identified by Officer

1. Because Abel presents no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived. *Williams v. State,* 724 N.E.2d 1093, 1097 n. 5 (Ind.2000).

2. *See* Ind.Code § 9–21–8–51 (failing to dim bright lights when meeting another vehicle or pedestrian is a Class B infraction).

Lewis as the passenger who had fled from the car, Abel was arrested for resisting law enforcement and carrying a handgun without a license.

■ Abel does not challenge the propriety of the initial stop. He concedes the stop itself was reasonable in that he "fit the general description of the sought-after person, was in the general area, and it was the early morning hours...." Br. of Appellant at 14. Abel is correct. *See Murphy v. State*, 747 N.E.2d 557, 559 (Ind. 2001) (finding reasonable suspicion to support stop in part because defendant was in a high crime area at 3:30 a.m. and ran between two houses when he saw the officers); *Johnson v. State*, 710 N.E.2d 925, 927–28 (Ind.Ct.App.1999) (finding reasonable suspicion to support stop where the defendant fit the general description of the suspect who had fled from the police and was stopped within the perimeter set up by the police). Abel complains, however, that the subsequent pat-down search was not reasonable because "[n]o information had been broadcast that the man sought was armed...." Br. of Appellant at 14. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), permits:

> a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27, 88 S.Ct. 1868. In determining whether the officer acted reasonably under the circumstances, due weight must be given not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Id.*

The record shows that Officers Patton and Stevenson believed they were on the lookout for a fleeing suspect who had just been involved in a robbery. Although there is no evidence in this record that a robbery had in fact occurred, Officer Lewis had broadcast that he thought a robbery had occurred or was about to occur. It was this information to which Officers Patton and Stevenson were reacting. Whether Officer Lewis was reasonably justified in his belief concerning a possible robbery suspect has no bearing on whether his fellow officers were entitled to rely upon his representation. *See Moody v. State*, 448 N.E.2d 660, 663 (Ind.1983) (holding that where police officers act in good faith reliance on a radio dispatch that a crime has been committed, there is no need to show that the source of the dispatcher's information is reliable); *see also Russell v. State*, 519 N.E.2d 549, 551–52 (Ind.1988) (finding investigatory stop warranted where the officer heard a radio dispatch that a possible robbery had been committed and the defendant matched the description relayed in the dispatch).

It is true that not every robbery is committed while armed with a deadly weapon. However, an "officer need not be absolutely certain that the individual is armed." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. In this case, considering the early morning high-speed chase by car and then the chase on foot, a reasonably prudent officer would be warranted in the belief that his safety or that of others was in danger. *Id.* Accordingly, Officers Patton and Stevenson did not violate Abel's Fourth Amendment right to be free from unreasonable searches and seizures by conducting a pat-down search for weapons and seizing Abel's handgun. In turn, the

trial court properly admitted the handgun into evidence.

## II.

■ Finding one aggravator, the nature and circumstances of the crime, in that "a human life was equated with a forty dollar drug debt," the trial court sentenced Abel to the maximum term of sixty-five years. R. at 978. The trial court found no mitigating factors. Abel contends the trial court did not "adequately support" the sentence it imposed. Br. of Appellant at 17. In so doing he does not challenge the propriety of the sole aggravating factor the trial court relied on to enhance his sentence. *See Smith v. State,* 675 N.E.2d 693, 698 (Ind.1996) (noting that the particular circumstances of a crime can be an aggravating circumstance); *see also Sherwood v. State,* 702 N.E.2d 694, 699 (Ind. 1998) (observing that only one valid aggravating factor is necessary to enhance the presumptive sentence). Rather, Abel complains the trial court failed to give adequate weight to his proffered mitigating factors. For example, Abel points out that he has only one prior misdemeanor conviction, that he expressed remorse and apologized to the victim's family, and that his young daughter will grow up without a father.

■ A finding of mitigating factors is well within the discretion of the trial court. *Georgopulos v. State,* 735 N.E.2d 1138, 1145 (Ind.2000). Further, a trial court is not obligated to weigh or credit the mitigating factors the way a defendant suggests they should be weighed or credited. *Id.; Shields v. State,* 699 N.E.2d 636, 639 (Ind.1998). Only when a trial court fails to find a mitigator that the record clearly supports does a reasonable belief arise that the mitigator was improperly overlooked. *Georgopulos,* 735 N.E.2d at 1145; *Shields,* 699 N.E.2d at 639–640.

The record shows that the trial court considered Abel's remorse: "Mr. Abel, I have to give you credit for writing a letter to the family because I frankly didn't think you were going to do anything like that...." R. at 977. However, the trial court did not give Abel's remorse any mitigating weight. The same is true of Abel's lack of criminal history:

> Your attorney has argued that I should consider your lack of criminal history as a mitigator. If [you] had no criminal history, I'd consider it a mitigator but I will reject that on the basis that [you] have some criminal history and it involved temper and it involved a confrontation with another human being....

R. at 977–78. As for the hardship that will result to his child from incarceration, Abel does not explain how his incarceration for the maximum sentence will result in more hardship to his daughter than his incarceration for the presumptive or minimum sentence. Indeed, the difference here between the presumptive or minimum sentence and the enhanced sentence "hardly can be argued to impose much, if any, additional hardship on the child." *Battles v. State,* 688 N.E.2d 1230, 1237 (Ind.1997). The trial court correctly declined to give this factor any mitigating weight. In sum, the trial court did not err in imposing sentence.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs except as to sentence.