## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 30 2017, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stacey Cabell,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

May 30, 2017

Court of Appeals Case No.
82A01-1608-CR-1962

Appeal from the Vanderburgh
Circuit Court

The Honorable Michael J. Cox,
Magistrate

Trial Court Cause No.
82C01-1512-F2-7529

**Crone, Judge.**

## Statement of the Case

Stacey Cabell appeals his convictions following a jury trial for level 4 felony methamphetamine possession, level 6 felony maintaining a common nuisance, and class B misdemeanor marijuana possession. He asserts that the trial court abused its discretion in admitting certain deposition testimony at trial and in denying his pretrial motion to compel the State to disclose the identity of its confidential informant. He also claims that the State presented insufficient evidence to support his convictions. Finding no abuse of discretion and the evidence sufficient, we affirm.

## Facts and Procedural History

On December 7, 2015, Evansville police sought a search warrant for Cabell's residence. According to the probable cause affidavit, a confidential informant approached Detective Cliff Simpson and advised him that Cabell "was obtaining ounce quantities of crystal methamphetamine" and distributing the drug from his residence. Appellant's App. Vol. 2 at 58. The informant stated that he had seen Cabell inside the residence on numerous occasions with crystal methamphetamine and firearms. Within the prior forty-eight hours, the informant observed Cabell inside the residence with at least one ounce of crystal methamphetamine. Detective Simpson further averred that within the sixty days prior, he conducted a controlled purchase of methamphetamine from Cabell using the informant. Detective Simpson provided the informant with "prerecorded buy money and audio/video equipment." *Id.* The informant went inside Cabell's residence and purchased one gram of a white crystal

substance that later field tested positive for methamphetamine. Detective Simpson personally reviewed the video of the controlled purchase and confirmed Cabell's identity. Detective Simpson additionally stated that he had conducted approximately fifteen controlled purchases of illegal substances with this particular informant and that the detective knew him to be credible and reliable.

[3] A judge approved the search warrant, and officers conducted surveillance of Cabell's residence and waited for him to leave. During the surveillance, officers observed several vehicles come and go from the residence. After Cabell left the residence, officers knocked on the door to serve the warrant. Cabell's girlfriend, LaChrista Cooper, who shared the residence with Cabell and her two children, answered the door and cooperated with the search. Officers found a bag of what appeared to be methamphetamine sitting on top of a digital scale in the kitchen. Subsequent testing confirmed the substance to be methamphetamine weighing 11.43 grams. Officers also found a substance that appeared to be marijuana as well as identification cards for Cabell and Cooper in the master bedroom. Testing confirmed that the substance was 1.87 grams of marijuana. A marijuana "roach" was located in an ashtray in the bedroom and $350 cash was found hidden under the mattress. Tr. Vol. 4 at 71. A K-9 officer indicated a small marijuana "grinder" with residue in it by the living room couch. *Id*. at 94. Officers also found an empty "hide-a-can," which is a can disguised to look like a drink can, but has a "void in the center of the can to hide something." *Id*. at 124. A duffle bag containing forty-three .38 Special bullets and a notebook

with Cabell's name on it was found in a small room adjacent to the kitchen. Additional ammunition was found in a trash can near the back door, and a handgun was found in a closet.

[4] The State charged Cabell with level 2 felony dealing in methamphetamine, level 4 felony unlawful possession of a firearm by a serious violent felon, level 6 felony maintaining a common nuisance, and class B misdemeanor possession of marijuana. The State further alleged that Cabell was a habitual offender. On February 22, 2016, Cabell requested a speedy trial, and the trial court set a trial date for April 27, 2016. The day before trial, Cabell moved for a continuance. The trial court granted Cabell's motion for continuance over the State's objection. Cabell again requested a speedy trial, and the trial court set a new trial date of June 29, 2016. Cabell also filed a discovery motion to compel the State to disclose the identity of its confidential informant. The State filed a response objecting to the disclosure. The trial court subsequently denied Cabell's motion to compel.

[5] A final pretrial conference was held five days before trial on June 24, 2016, to address the unavailability for trial of two of the State's witnesses, Vanderburgh County Sheriff's Office Lieutenant Jason Ashworth and Detective John Pieszchalski. The State explained to the trial court that the State had allowed Detective Pieszchalski to schedule a vacation out of the country because defense counsel had represented to the State that Cabell would stipulate to the admission of the officer's evidence. Defense counsel acknowledged his representation that Cabell would stipulate to the evidence but indicated that he

had failed to discuss the matter with his client until the current hearing and his client did not agree to the stipulation. As for Lieutenant Ashworth, despite being subpoenaed by the State, the officer informed the trial court that he had been unaware of the new trial date and had inadvertently scheduled a vacation during that date. Both officers were witnesses regarding the chain of custody of evidence obtained at Cabell's residence. The State proposed that the parties take the depositions of the two witnesses in open court to allow Cabell the opportunity to confront and cross-examine them and then a record of the deposition would be submitted to the jury during trial. In the alternative, the State proposed setting a trial date of July 11, 2016, which would be six days beyond the seventy-day speedy trial period, so that the witnesses would be available for trial. Cabell objected to both the State's proposals.

[6] Acknowledging the State's predicament as well as Cabell's role in placing the State in a difficult position, the trial court urged a short continuance of the trial date so that both officers could appear at trial. Cabell rejected the court's suggestion and stated that he wished to maintain his trial date. Thus, the trial court determined that the officers were unavailable for trial and permitted the State to take the officers' depositions in open court at the hearing and to later submit a record of the depositions to the jury during trial.

[7] A jury trial was held on June 29 and 30, 2016. During trial, the trial court admitted the officers' deposition testimony into evidence over Cabell's objection. The jury found Cabell guilty of level 4 felony possession of methamphetamine as a lesser included offense of the dealing charge, level 6

felony maintaining a common nuisance, and class B misdemeanor possession of marijuana. The jury acquitted Cabell of the firearm charge, and the State dismissed the habitual offender allegation. The trial court sentenced Cabell to an executed sentence of ten years. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in admitting the deposition testimony of two unavailable witnesses.

[8] We first address Cabell's challenge to the trial court's admission of evidence. The appellate court affords the trial court wide discretion in ruling on the admissibility of evidence. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). "We review evidentiary decisions for abuse of discretion and reverse only when the decision is clearly against the logic and effect of the facts and circumstances." *Id*.

[9] Here, the trial court admitted the deposition testimony of two police officers who did not appear at trial due to scheduled vacations. Cabell argues that the trial court abused its discretion in doing so because the admission of the officers' deposition testimony violated his right of confrontation under the Sixth Amendment to the United States Constitution. We disagree.[1]

---

[1] As noted by the State, Cabell briefly mentions the Indiana Constitution but provides no separate or independent state constitutional analysis in his brief. Consequently, his state constitutional claim is waived.

[10] Addressing this issue, our supreme court has explained,

> Generally, deposition testimony of an absent witness offered in court to prove the truth of the matter asserted constitutes classic hearsay. Possible exceptions to the hearsay rule lie under both Indiana Trial Rule 32 and Indiana Evidence Rule 804, which allow the use of prior recorded testimony in lieu of live testimony in certain circumstances. The decision to invoke the rule allowing admission of prior recorded testimony such as a deposition, is within the sound discretion of the trial court.
>
> Nevertheless, the constitutional right of confrontation restricts the range of admissible hearsay by requiring (1) that the statements bear sufficient indicia of reliability and (2) that the prosecution either produce the declarant or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. Depositions that comport with the principal purposes of cross-examination provide sufficient indicia of reliability.

*Garner v. State*, 777 N.E.2d 721, 724 (Ind. 2002) (citations omitted).

[11] Here, the depositions of the two officers were taken in open court, and both Cabell and his attorney were in attendance. Cabell's attorney was able to extensively question and cross-examine the witnesses, and therefore there was ample opportunity to challenge the credibility of the witnesses. Accordingly, the depositions demonstrated sufficient indicia of reliability, and we now

---

*See Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002) (failure to present authority or independent analysis supporting separate standard under state constitution results in waiver of state constitutional claim).

address the question of whether the two witnesses were unavailable for purposes of the constitutional right of confrontation.

> A witness is unavailable for purposes of the Confrontation Clause requirement only if the prosecution has made a good faith effort to obtain the witness's presence at trial. Even though Trial Rule 32(A) permits use of an absent witness's deposition testimony if the court finds that the "witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition," we have previously determined that this trial rule is not applicable to claims involving a violation of the defendant's Sixth Amendment right of confrontation. The issue is not whether the witnesses were out-of-state at the time of trial, but whether the State made a good faith effort to obtain the absent witnesses' attendance at trial. Even if there is only a remote possibility that an affirmative measure might produce the declarant at trial, the good faith obligation may demand effectuation. Reasonableness is the test that limits the extent of alternatives the State must exhaust.

*Id.* (citations and footnote omitted).

[12] The record here reflects that the State made a reasonable effort to gain the attendance of the two officers at Cabell's trial. Both officers were available and prepared to testify at the original trial date. However, that date was continued and reset the day before the scheduled date at the request of Cabell and over the objection of the State. Regarding Detective Pieszchalski, the State allowed him to schedule a vacation out of the country during the reset trial date because defense counsel represented to the State that Cabell would stipulate to the officer's evidence. Defense counsel acknowledged that he indeed made this representation to the State. The State was not made aware that Detective

Pieszchalski's testimony would be necessary until five days before trial at the final pretrial hearing, when Cabell indicated that he would not stipulate to the officer's evidence. Regarding Lieutenant Ashworth, the State served him with a subpoena for the reset trial date, but the officer stated that he was nonetheless unaware of the reset date and had scheduled an out-of-town vacation. To procure both officers' attendance at trial, the State suggested a short continuance of two weeks so that both officers could appear and provide live testimony. The trial court agreed that this was the preferable solution in light of the State's unwitting predicament as well as Cabell's role in placing the State in that position. However, because a continuance would put his trial six days beyond the second seventy-day speedy trial setting, Cabell refused to agree to a postponement. The trial court recognized the State's good faith efforts to obtain the officers' attendance at trial and permitted the State to take the steps necessary to preserve both officers' testimony by having the State take both their depositions in open court. *See* Tr. Vol. 3 at 15-16.

[13] Indiana Criminal Rule 4(D) permits the trial court to extend a trial date beyond the seventy-day period, and "[t]he absence of a key witness through no fault of the State is good cause for extending the time period requirements." *Otte v. State*, 967 N.E.2d 540, 546 (Ind. Ct. App. 2012). As noted above, this alternative was urged by the trial court but rejected by Cabell in favor of pushing his trial forward. While we agree with Cabell that "[a] mere vacation is not sufficient to circumvent the right of confrontation," *Garner*, 777 N.E.2d at 725, we also note that the test is one of good faith and reasonableness, and

reasonableness does not require that the State make every possible effort to secure a witness's attendance. Under the circumstances presented here, we agree with the trial court that the State undertook reasonable efforts to procure the officers' presence at Cabell's trial, and therefore the officers were unavailable for purposes of the constitutional right of confrontation. Accordingly, the trial court did not abuse its discretion when it admitted the officers' deposition testimony into evidence.

## Section 2 – The trial court did not abuse its discretion in denying Cabell's pretrial motion to compel the State to disclose the identity of its confidential informant.

We next address Cabell's assertion that the trial court abused its discretion in denying his pretrial motion to compel the State to disclose the identity of its confidential informant. In *Beville v. State*, 71 N.E.3d 13, 19 (Ind. 2017), *reh'g pending*, our supreme court recently discussed the well-established "informer's privilege."

> Under this privilege, Indiana generally withholds the disclosure of evidence that reveals an informant's identity for at least two important policy reasons—preventing retaliation against informants and ensuring individuals come forward with information to help law enforcement. The informer's privilege, however, is not absolute: if the accused seeks disclosure, the burden is on him to demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial. To meet this burden, the defendant must also show that he is not merely speculating that the information may prove useful. If the defendant overcomes his burden, the burden shifts to the State to present evidence showing that disclosure is not necessary to the

defendant's case or that disclosure would threaten its ability to recruit or use CIs in the future. Then, with both sides' evidence, the trial court must determine whether disclosure is appropriate by balancing the public interest in encouraging a free flow of information to the authorities with the defendant's interest in obtaining disclosure to prepare his defense. The trial court should not disclose an informant's identity to permit a mere fishing expedition.

*Id.* (citations and quotation marks omitted).

[15] Here, Cabell did not meet his burden to show how disclosure of the confidential informant's identity would have been relevant and helpful to his defense, or was necessary for a fair trial. Cabell argues that the informant provided "material information" underlying the search warrant affidavit and that without the informant's identity, he was unable to "challenge or confirm that what Detective Simpson alleged the C.I. told him was true." Appellant's Br. at 15. However, we agree with the State that the informant's identity had little relevance because probable cause to search was not simply based on the uncorroborated statements or credibility of the confidential informant. Instead, Detective Simpson stated that he personally reviewed video from the controlled buy which provided him probable cause to search Cabell's residence. Simply put, the confidential informant's statements and/or credibility did not play a substantial role in the issuance of the search warrant. As such, Cabell's request for disclosure appears to have been simply a fishing expedition, and that does not suffice. Cabell did not meet his burden, and therefore the trial court did not

abuse its discretion in denying his pretrial motion to compel the State to disclose the identity of its confidential informant.

## Section 3 – The State presented sufficient evidence to support Cabell's convictions.

Cabell next contends that the State presented insufficient evidence to support his convictions. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500.

To convict Cabell of possession of methamphetamine and possession of marijuana, the State was required to prove that he knowingly or intentionally possessed those drugs. *See* Ind. Code §§ 35-48-4-6.1(c)(2), 35-48-4-11.[2] Possession may be actual or constructive, *see Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011), and here the State alleged constructive possession. Cabell's sole assertion is that the State presented insufficient evidence that he constructively possessed the methamphetamine or marijuana found in his residence because

---

[2] Cabell was convicted of level 4 felony possession of methamphetamine pursuant to Indiana Code Section 35-48-4-6.1(c)(2) and class B misdemeanor possession of marijuana pursuant to Indiana Code Section 35-48-4-11.

he did not have exclusive control over the premises where the drugs were found and he was not present when the drugs were found.

[18] To prove constructive possession, the State was required to show that Cabell had both the intent and the capability to maintain dominion and control over the contraband. *Thompson v. State*, 966 N.E.2d 112, 122 (Ind. Ct. App. 2012). The jury may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item, even when that possessory interest is not exclusive. *Gray*, 957 N.E.2d at 174. When an individual does not have exclusive dominion over the premises, an inference indicating knowledge of and capability to maintain dominion and control over the contraband is permitted by showing additional circumstances. *Griffin v. State*, 945 N.E.2d 781, 784 (Ind. Ct. App. 2011). Recognized "additional circumstances" include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) the contraband is in plain view; and (6) the location of the contraband is in close proximity to items owned by the defendant. *Id*.

[19] Here, the methamphetamine was found in plain view on top of a scale in the kitchen of the residence that Cabell shared with Cooper and her children. The marijuana was found in the master bedroom in close proximity to Cabell's identification and a large amount of cash that belonged to him and not to Cooper. Surveillance indicated suspicious traffic in and out of the residence

while Cabell was home alone, and the surveillance also indicated that Cabell had just left the residence and Cooper had just returned at the time of the search. Cabell further made several incriminating statements to Cooper regarding his knowledge of the contraband recovered from the residence. This evidence is sufficient to establish that Cabell had both the intent and the capability to maintain dominion and control over the contraband, and therefore that he constructively possessed the contraband. Sufficient evidence supports Cabell's convictions for possession of methamphetamine and possession of marijuana.

[20] Cabell also asserts that the State presented insufficient evidence to support his conviction for maintaining a common nuisance. To convict him of that crime, the State was required to prove that he knowingly or intentionally maintained a building, structure, vehicle, or other place for unlawfully manufacturing, keeping, offering for sale, selling, delivering, or financing the delivery of controlled substances or items of drug paraphernalia. *See* Ind. Code § 35-48-4-13(b)(2) (effective July 1, 2014 to June 30, 2016). The State presented evidence that officers found 11.43 grams of methamphetamine on top of a digital scale in Cabell's residence, a handgun, ammunition, and $350 in cash hidden under a mattress. Surveillance of the residence showed several vehicles coming and going from the residence during the day, including "a few short term traffic visitors." Tr. Vol. 5 at 46. The jury could reasonably infer from this evidence that Cabell knowingly maintained his residence for unlawfully manufacturing,

keeping, offering for sale, selling, delivering, or financing the delivery of controlled substances.

Nevertheless, Cabell claims that "[b]ecause the State failed to show that [he] constructively possessed the contraband" inside the residence, the State failed to show that he knowingly maintained the residence with the intent that it be used for unlawful purposes. Appellant's Br. at 18. As we already concluded, the State presented sufficient evidence that Cabell constructively possessed the contraband found inside his residence. Cabell further argues that the "jury expressly rejected the State's belief that Cabell knowingly possess[ed] with the intent to deliver methamphetamine" because rather than convicting him of dealing that drug, it convicted him of the lesser included offense of possession. *Id*. Be that as it may, that does not render the evidence supporting his maintaining a common nuisance conviction insufficient. It is well settled that jury verdicts in criminal cases are not subject to appellate review on the grounds that they are inconsistent, contradictory, or irreconcilable. *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010). And, an acquittal on one count does not indicate a jury's conclusion about other counts. *Id*. at 648-49. The State presented sufficient evidence to support Cabell's conviction for maintaining a common nuisance. Therefore, we affirm his convictions.

Affirmed.

Barnes, J., and Robb, J., concur.