## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 13 2019, 7:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Sixto Cotto,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 13, 2019

Court of Appeals Case No.
74A04-1711-CR-2608

Appeal from the Spencer Circuit Court

The Honorable Jonathan A. Dartt, Judge

Trial Court Cause No.
74C01-1702-F5-54

**Pyle, Judge.**

# Statement of the Case

Sixto Cotto ("Cotto") appeals, following a jury trial, his two convictions for Level 5 felony dealing in methamphetamine.[1]  Cotto argues that:  (1) the trial court abused its discretion when it admitted into evidence his cell phone and three text messages found on it; (2) his two dealing in methamphetamine convictions violate the continuous crime doctrine; and (3) there was insufficient evidence to support his two convictions.  Concluding that any alleged error in the admission of the challenged evidence constituted harmless error, that his convictions do not violate the continuous crime doctrine, and that the evidence was sufficient, we affirm his two convictions.

We affirm.

# Issues

1. Whether the trial court abused its discretion in its admission of evidence.

2. Whether Cotto's two dealing in methamphetamine convictions violate the continuous crime doctrine.

3. Whether sufficient evidence supports Cotto's two convictions.

---

[1] I.C. § 35-48-4-1.1.  The jury also found Cotto guilty of Level 6 felony possession of methamphetamine; however, the trial court merged that conviction into one of Cotto's dealing convictions and did not enter judgment.

## Facts

[3] Cotto and Nicholas Polen ("Polen") worked at Kimball International ("the Kimball plant") in Santa Claus, Indiana. In December 2016, Polen, who was on probation from a manufacturing methamphetamine conviction, had a positive drug screen for methamphetamine. Polen told his probation officer that he had gotten the methamphetamine from Cotto, and he offered to work with the police as a confidential informant. Thereafter, Spencer County Sheriff Deputy Kelli Reinke ("Deputy Reinke") spoke with Polen about making a controlled buy of methamphetamine from Cotto.

[4] In February 2017, Polen and Cotto made arrangements to meet at Stones Motel in Dale, Indiana ("the motel") where Polen could purchase an "eight-ball"[2] of methamphetamine from Cotto for $250.00. (Tr. Vol. 3 at 124). They also planned for Cotto to "front" another eight-ball of methamphetamine. (Tr. Vol. 3 at 124).

[5] On February 16, 2017, Deputy Reinke met with Polen at a barn near the motel. Deputy Reinke searched Polen's vehicle and person to ensure that he had no controlled substances. Deputy Reinke also installed a video recording device and an audio recording device in Polen's truck. Polen and Deputy Reinke then drove toward the motel. Polen parked at the motel, while Deputy Reinke

---

[2] Deputy Reinke testified that an eight-ball of methamphetamine is equivalent to one-eighth of an ounce and weighs around 3.5 grams.

parked in a nearby parking lot where she observed the scene at the motel with binoculars and was able to see and recognize Cotto. At the motel, Cotto walked up to Polen's truck and handed Polen a cigarette carton that contained a baggie with one eight-ball of methamphetamine. Polen left and drove to the meeting point with Deputy Reinke, who then searched Polen's truck and person. Polen gave Deputy Reinke the cigarette carton containing the baggie of methamphetamine, which weighed 3.26 grams.

[6] Thereafter, Deputy Reinke and Polen made plans for a second controlled buy, and Polen arranged to purchase a second eight-ball of methamphetamine from Cotto on February 23, 2017. However, the transaction did not occur because of a supply issue.

[7] On February 24, 2017, Cotto and Polen were working the late shift at the Kimball factory. Cotto walked up to Polen and handed him an eight-ball of methamphetamine that was wrapped in plastic and a paper towel. Cotto did not ask Polen for any payment. Around 1:00 a.m., Polen texted Deputy Reinke to tell her that Cotto had given him some methamphetamine. Later that morning, Polen met Deputy Reinke at the probation office, and he gave her the methamphetamine that he had received from Cotto. The methamphetamine weighed 3.19 grams.

[8] On February 27, 2017, Deputy Reinke obtained an arrest warrant for Cotto. That same day, Deputy Reinke and other deputies went to a country road leading to the entrance of the Kimball factory to wait for Cotto as he arrived for

work. When they stopped Cotto, he parked his car in the roadway. The "registration plates" on Cotto's car were registered to a different vehicle. (App. Vol. 3 at 71). The deputies impounded Cotto's vehicle "due to it being in the roadway" and because of the improper plate. (Tr. Vol. 3 at 71). Deputy Reinke served the arrest warrant, patted down Cotto, and found $766.00 in Cotto's pocket. The deputies placed Cotto in a police car and ran a canine officer around his vehicle, and the canine alerted on the driver's side door. The deputies searched Cotto's vehicle and seized a cell phone, a trac phone, an iPod, two prescription bottles, four capsules, a backpack with a laptop inside, and two composition notebooks containing names and phone numbers. Deputy Reinke later obtained a search warrant for a Cotto's cell phone, and the police obtained some text messages from his phone.

[9] The State ultimately charged Cotto with Count 1, Level 5 felony dealing in methamphetamine (for the February 16, 2017 delivery of methamphetamine); Count 2, Level 6 felony possession of methamphetamine (based on the February 16 incident); and Count 3, Level 5 felony dealing in methamphetamine (for the February 24, 2017 delivery of methamphetamine).[3] The State also charged Cotto, in a separate cause, 74C01-1703-F6-58 ("the F6-58 cause"), with a Level 6 felony offense stemming from the items found during

---

[3] The State initially charged Cotto under separate cause numbers for these three charges. Count 1 and 2 were charged in one cause, 74C01-1702-F5-54, and Count 3 was charged in another cause, 74C01-1703-F5-74. The State later sought and was granted permission to join the two causes.

the search of his vehicle when the police executed the arrest warrant on February 27.[4]

[10] On June 19-21, 2017, the trial court held a three-day jury trial. On the morning of trial, Cotto made an oral motion to suppress evidence of the cell phone or text messages. Cotto had filed a motion to suppress in the F6-58 cause and wanted to incorporate that motion into this cause.[5] The trial court then held a hearing on Cotto's motion to suppress prior to commencing the trial, and Deputy Reinke testified to the details of the search as set forth above. She also testified that the sheriff's department had a policy for doing an inventory search. The trial court denied Cotto's suppression motion.

[11] During the trial, Deputy Reinke and Polen testified regarding the facts surrounding Cotto's two deliveries of methamphetamine to Polen on February 16 and February 24.[6] The video and audio recordings of the controlled buy were admitted into evidence and played for the jury. Additionally, the State moved to admit into evidence Cotto's cell phone (State's Exhibit 28) and photographs of three text messages that were on Cotto's phone (State's Exhibits

---

[4] The record before us does not indicate the exact charge that was filed in the F6-58 cause.

[5] In the F6-58 cause, Cotto had moved to suppress "[a]ny property, observations, statements" that had been obtained during the February 27, 2017 search of his vehicle. (App. Vol. 2 at 44). In that motion, Cotto argued that the search violated his rights under the Fourth Amendment of the United States Constitution and Article 1, § 11 of the Indiana Constitution. More specifically, he asserted that the officers lacked probable cause for the search, that the search was not a proper inventory search, and that the search was unreasonable under the totality of the circumstances.

[6] Prior to trial, Cotto filed a motion to reveal the identity of the confidential informant. The trial court held a hearing and granted Cotto's motion. Thus, Polen testified at trial.

29-33).[7]  The three texts were sent from Polen to Cotto.  One of the texts was dated February 13, and the two others were dated February 24.  The February 13 text message provided:  "Got your $, need same asap if possible"  (State's Ex. 33) (lack of punctuation in original).  The first February 24 text message had a time stamp of "9:35" and provided:  "U have some linda problem with me or what?"  (State's Ex. 32).  The second February 24 text message, which had a time stamp of "10:17[,]" provided as follows:  "I have cash on me for one tonight, ol boy said he come up whatever time I want him to with $ tomorrow.  He might take everybit of what u told me last nigh"  (State's Exs. 29-31) (misspellings, grammar errors, and lack of punctuation in original).

[12]  Cotto objected to the admission of the cell phone and the texts.  The State told the trial court that it sought to admit the text messages only to show that Polen had communicated with Cotto around the time of the two deliveries and that it was not being offered to "prove the contents" or the "truth of the matter asserted."  (Tr. Vol. 4 at 26).  Cotto responded that there was no dispute about whether Polen had contacted Cotto.  The trial court overruled Cotto's objection and admitted the exhibits into evidence.

[13]  Cotto's trial defense was that he had been set up by Polen because Polen was trying to gain leniency with his probation violation.  He argued to the jury that Polen had a hidden baggie of methamphetamine, either in his car or on his

---

[7] During the trial, the State referred to two text messages.  Our review of the exhibits reveals that there were three text messages.

person, that Deputy Reinke had failed to detect during her search before the February 16 controlled buy. Cotto also suggested that Polen had also provided the methamphetamine on February 24 and had claimed that Cotto had given it to him. The jury deliberated for thirty minutes and found Cotto guilty as charged.

[14] At sentencing, Cotto argued that his convictions constituted a single episode of criminal conduct under INDIANA CODE § 35-50-1-2.[8] The trial court rejected Cotto's argument and found, in relevant part, that:

> [T]here were two (2) distinct drug transactions on which the jury found Defendant guilty. They were on different dates eight (8) days apart (February 16, 2017 and February 24, 2017), at different locations (Stones Motel in Dale, Indiana and Kimball International in Santa Claus, IN), and were under different circumstances (one was a controlled buy with law-enforcement where money was exchanged for drugs and the other was where drugs were fronted by the Defendant directly to the informant without money being paid).

(App. Vol. 2 at 27). The trial court imposed a six (6) year sentence for each of his Level 5 felony dealing in methamphetamine convictions and ordered them to be served consecutively. Cotto now appeals.

---

[8] INDIANA CODE § 35-50-1-2(b) provides that an "episode of criminal conduct means offenses or a connected series of offenses that are closely related in time, place, and circumstance."

# Decision

Cotto argues that: (1) the trial court abused its discretion by admitting into evidence the cell phone and text messages; (2) his two Level 5 felony dealing in methamphetamine convictions violate the continuous crime doctrine; and (3) there was insufficient evidence to support his two convictions. We will review each argument in turn.

## 1. Admission of Evidence

Cotto first challenges the admission of evidence at his jury trial.[9] In his appellate brief, Cotto refers generally to the evidence seized from the search of his car—which included a cell phone and three text messages that were later extracted pursuant to a search warrant; an iPod; drug tablets and capsules; a laptop; and notebooks containing names and phone numbers—and the evidence seized from the search of his person—which was $766 in cash. He asserts that "all this evidence" was introduced at trial, that he objected to it, and that the trial court abused its discretion by admitting it. (Cotto's Br. 8). Cotto is apparently confused because most of this evidence was not even offered at trial. The only evidence offered and admitted, over Cotto's objection, were the

---

[9] Cotto raised this issue as a challenge to the trial court's denial of his motion to suppress. However, because Cotto is appealing following a trial, the issue presented is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

three text messages and the cell phone. Thus, we focus our analysis to his challenge to the admission of the text messages and cell phone.

[17] Cotto argues that three text messages found on his cell phone should not have been admitted into evidence because they were obtained as a result of a warrantless search of his vehicle, which was in violation of his Fourth Amendment rights.[10] The State contends that the seizure was proper under either the inventory search exception or the automobile exception.

[18] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[19] We need not, however, determine whether the trial court abused its discretion by admitting the text messages and cell phone into evidence because even if it was erroneous to admit the evidence, any error was harmless. "The improper admission of evidence is harmless error when the conviction is supported by

---

[10] Cotto also generally asserts that the search violated his rights under Article 1, § 11 of the Indiana Constitution. He, however, makes no cogent argument nor provides an independent analysis regarding the reasonableness of the search under our state constitution. Accordingly, he has waived any challenge to the admission of the evidence based on the Indiana Constitution. *See* Ind. Appellate Rule 46(A)(8); *Abel v. State,* 773 N.E.2d 276, 278 n. 1 (Ind. 2002) (holding that the defendant had waived any state constitutional claim where he presented no authority or independent analysis supporting a separate standard under the state constitution).

substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000), *reh'g denied*. *See also Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014) ("If we are satisfied the conviction is supported by independent evidence of guilt such that there is little likelihood the challenged evidence contributed to the verdict, the error is harmless.").

[20] Here, Cotto was charged with two counts of dealing in methamphetamine by delivering it. The text messages from Polen to Cotto were not presented to provide evidence of Cotto's actual deliveries. There was, however, substantial independent evidence that Cotto delivered methamphetamine to Polen on two different occasions. Deputy Reinke and Polen provided testimony regarding Cotto's first methamphetamine delivery on February 16, 2017 at the motel. This first delivery was from a controlled buy, and the State admitted the video and audio recordings of the controlled buy. Additionally, Polen testified regarding Cotto's second methamphetamine delivery on February 24, 2017 at the Kimball plant. Polen testified that he and Cotto were at work when Cotto gave him the baggie of methamphetamine. Polen contacted Deputy Reinke and later gave her the methamphetamine that Cotto had delivered to him. Based on our review of the record and the evidence supporting Cotto's convictions, we are satisfied that there is no substantial likelihood that the challenged evidence contributed to jury's verdicts and, therefore, conclude that the admission of the evidence was harmless error.

## 2. Continuous Crime Doctrine

[21] Cotto contends that his two convictions for dealing in methamphetamine violate the continuous crime doctrine.[11]

[22] "The continuous crime doctrine is a rule of statutory construction and common law" and "applies only where a defendant has been charged multiple times with the same 'continuous' offense." *Hines v. State*, 30 N.E.3d 1216, 1219, 1220 (Ind. 2015). The doctrine "establishes that actions that are sufficient to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Pugh v. State*, 52 N.E.3d 955, 970 (Ind. Ct. App. 2016), *trans. denied*. "'The doctrine involves those instances where a defendant's conduct amounts to only a single, chargeable crime such that the State is prevented from charging a defendant twice for the same offense.'" *Id.* "The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime." *Hines*, 30 N.E.3d at 1219. Our review of the continuous crime doctrine "'requires a fact-sensitive analysis.'" *Heckard v. State*, -- N.E.3d --, No. 18A-CR-1376, 2019 WL 510370,

---

[11] Our Court has explained that "Indiana case law alternates between 'continuing' crime doctrine and 'continuous' crime doctrine." *Flores v. State*, 114 N.E.3d 522, 523 n.2 (Ind. Ct. App. 2018). Because our supreme court has referred to it as the "continuous" crime doctrine, so too shall we. *See id.* (citing *Hines v. State*, 30 N.E.3d 1216 (Ind. 2015)).

*7 (Ind. Ct. App. Feb. 11, 2019) (quoting *Gomez v. State*, 56 N.E.3d 697, 703 (Ind. Ct. App. 2016)).

[23] Here, Cotto was charged with two counts of Level 5 felony dealing in methamphetamine, both based on the delivery of methamphetamine. We acknowledge that he was charged with the same criminal offense; however, we reject Cotto's argument that his two crimes constituted the same "continuous" offense. Two offenses are considered to be a "continuous transaction when they are closely connected in time, place, and continuity of action." *Hines*, 30 N.E.3d at 1220. Cotto's first conviction of dealing in methamphetamine is based on a controlled buy where Cotto delivered methamphetamine to Polen on February 16, 2017 at a motel in Dale, while his second conviction is based on his delivery of methamphetamine to Polen on February 24, 2017 when they were working at the Kimball plant in Santa Claus. The fact that Cotto delivered the same drug to the same person does not negate the fact he engaged in two distinct crimes when he delivered the drugs on two different dates at two different locations. Thus, Cotto's two convictions do not violate the continuous crime doctrine. *See, e.g.*, *Heckard*, 2019 WL 510370 at *7-8 (holding that the defendant's two convictions did not violate the continuous crime doctrine); *Pugh*, 52 N.E.3d at 971 (holding that the defendant's crimes, which were

"separate in time" from each other did not violate the continuous crime doctrine).[12]

### 3. Sufficiency of Evidence

[24] Cotto argues that the evidence was insufficient to support his two convictions for Level 5 felony dealing in methamphetamine.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder would find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

---

[12] We also reject Cotto's contention that his two convictions violate the double jeopardy clause of the Indiana Constitution and his assertion that "the trial evidence demonstrates that Counts 1 and 3 were not established by separate and distinct facts." (Cotto's Br. 19). More specifically, Cotto contends that the same evidence was used to establish that he had made an "agreement" to sell two eight-balls of methamphetamine. (Cotto's Br. 19). As the State aptly points out, "the presence or lack of any agreement between [Cotto] and Polen is irrelevant to the necessary proof for a charge of Level 5 felony dealing in methamphetamine." (State's Br. 23). Moreover, our review of the record reveals that there is no reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of his February 16 dealing in methamphetamine offense may have also been used to establish the essential elements of his February 24 dealing in methamphetamine offense. *See Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999).

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Additionally, our Indiana Supreme Court has explained that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*." *Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (emphasis in original).

[25] To convict Cotto of Level 5 felony dealing in methamphetamine, as charged in Count 1, the State was required to prove beyond a reasonable doubt that Cotto knowingly or intentionally delivered methamphetamine on February 16, 2017. To convict Cotto of Level 5 felony dealing in methamphetamine, as charged in Count 3, the State was required to prove beyond a reasonable doubt that Cotto knowingly or intentionally delivered methamphetamine on February 24, 2017. "Delivery" is defined, in relevant part, as "an actual or constructive transfer from one (1) person to another of a controlled substance[.]" I.C. § 35-48-1-11.

[26] Cotto contends that "[t]he State's evidence failed to establish that it was Cotto who transferred methamphetamine to Polen" and that "the jury's verdicts [were] based entirely on speculation." (Cotto's Br. 22). Cotto mainly challenges Polen's credibility and the thoroughness of Deputy Reinke's search prior to the controlled buy. Cotto raised these same arguments to the jury. He argued that Polen had a hidden baggie of methamphetamine, either in his car or on his person, that Deputy Reinke had failed to detect during her search before the February 16 controlled buy. Cotto also suggested that Polen had also provided the methamphetamine on February 24 and had claimed that Cotto had given it

to him. The jury rejected his arguments and found Cotto guilty of both counts of dealing in methamphetamine.

[27] Cotto's arguments amount to nothing more than a request to reweigh the evidence and the jury's assessment of credibility, which we cannot do. *See Drane*, 867 N.E.2d at 146. The evidence presented at trial supports the jury's determination that Cotto delivered methamphetamine to Polen on February 16 and February 24. Accordingly, we affirm Cotto's two convictions for Level 5 felony dealing in methamphetamine.

[28] Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.